56    239
82    211

G. B. BEAUCHAMP V. I. & G. N. R'Y Co.

(Case No. 857.)

1. EVIDENCE—DAMAGES.— The time-table of a railway company, which on its face announces that it is for the government and information of employees only, and in terms reserves to the company the right to vary therefrom at pleasure, is not admissible in evidence in a suit for damages against the company for not stopping the train at a place mentioned in the time-table, but at which no station was ever really established.

2. NEW TRIAL.— The supreme court will not grant a new trial on the ground of surprise when it was the result of misapprehension by the counsel of the law of the case.

3. It is the duty of a person about to take passage on a railway train to inform himself when, where and how he can go and stop, according to the regulations of the railway company; and if he makes a mistake, not induced by the company, against which ordinary care in this respect would have protected him, he has no remedy against the company for the consequences.

4. Railway passengers.— By his ticket the passenger on a railway train acquires the right only to be carried according to the custom of the road. He has the right to go to the place which his ticket calls for on any train that usually carries passengers to that place, but he cannot insist on being carried out of the customary course of the road.

Error from Harris. Tried below before the Hon. James Masterson.

This was a suit brought by the appellant, G. B. Beauchamp, against the International & Great Northern Railroad Co. for damages, based upon the failure of the defendant to stop the mixed train upon which he was a passenger at a point on said road called "Cross Timbers," between Waverly and Houston, and within five miles of Houston, the plaintiff being a passenger on said train and having purchased his ticket at Waverly, and which called for Houston as his destination. The appellant, after having embarked on the train, requested the conductor to put him off at "Cross Timbers," but the conductor informed him that he could not comply with that request because he was behind time, in consequence whereof he was brought to Houston on the train and walked back home near "Cross Timbers" the same night after reaching Houston.

The defendant filed a general denial.

The plaintiff as a witness testified that on the 11th of October, 1875, at Waverly, he purchased the ticket above referred to, and started on a freight train, shortly afterwards taking the accommodation train which ran from Willis to Houston. That he requested Sullivan, the conductor, to put him off at "Cross Timbers," with the result

which has been stated; and who further stated that the
train did not stop at "Cross Timbers," and that he could
not stop the train to put him off. Witness said that he
took the accommodation train because he thought it would
stop at that point and he could get off and reach his home,
which was near there; that it is usual and customary for
accommodation trains to stop at all way stations and
switches. Witness stated on cross-examination that the
railway company did no business at "Cross Timbers," has
no agent at that point, nor platform, nor station-house,
nor house of any kind,— has nothing there but a switch.
The defendant once had a wood-yard there, but there was
no wood-yard at that point on the 11th of October, 1875.
Never of his own knowledge knew of any person getting
on or off at that place except Mr. Tally and his family,
who, with their baggage, occupied a whole box car, and
who were moving into that neighborhood at that time.

The testimony of the defense, given through officers of
the road then in its employment, strongly negatived the
suggestion of "Cross Timbers" being a point at which
any of its trains stopped under any regulation to that ef-
fect established by the company, and that in fact its trains
were not in the habit of stopping there, except when it
was necessary for trains to pass each other.

On the trial the plaintiff offered in evidence Time Sched-
ule No. 21, which was attached to the record in this case
as an exhibit, and is sufficiently described in the opinion.
The bill of exceptions shows that it was offered to prove
that the station "Cross Timbers" was by the company in
said time schedule written down and treated as a station,
and that the accommodation trains were ordered to stop
there, all of which he offered to show "by the same;" and
this evidence the court excluded on the ground that, it
being "for the government and information of employees
only," it was not competent evidence in plaintiff's behalf,
while it might be for employees. To this ruling the plaint-

iff excepted, claiming that the schedule admits a fact which it is competent to prove, regardless of the manner of its admission, to whom made or for what purpose; and the schedule was offered by plaintiff to contradict the evidence of defendant's witnesses, who testified that they had no instructions to regard this as a station, or to stop at it, and that they were not in possession of information from the company to so regard or treat it. To its introduction for this purpose it was also excluded, to which plaintiff excepted. Verdict and judgment for the defendant.

The plaintiff assigned the following as grounds of error:

"1. The court erred in refusing to allow plaintiff to introduce in evidence 'Time Schedule No. 21' of the International & G. N. R. R. Co., as per plaintiff's bill of exceptions.

"2. The court erred in its charge to the jury in two respects: 1st. In making prominent the impression on the mind of the court that 'Cross Timbers' was not a regular stopping place, and thereby influencing the jury to take that view from the court. 2d. In charging that if 'Cross Timbers' is a siding where sometimes the passenger or accommodation trains stopped and sometimes did not, then find for defendant; thereby presenting an issue as to the *habit* and not the *duty* of the company.

"3. The court erred in not granting us a new trial (after ruling out our evidence upon which we had relied to establish our case) when we presented the affidavit of witnesses Tally, Westcott and Koenig."

*Hutcheson & Carrington*, for plaintiff in error.

*Baker & Botts*, for defendant in error.

WALKER, P. J. COM. APP.— Whether the court erred or not in the exclusion of the time-table offered in evidence, as an abstract legal question under the rules of

pleading and evidence, will not necessarily determine the reversal or the affirmance of the judgment. If the evidence offered, being admitted, could not properly have influenced the jury to a result different from that at which they arrived from the consideration of the other evidence in the case, then, in such case, if it were improperly excluded, the error would have been an abstract error, which would not work a reversal of the judgment. Neither the admission nor exclusion of testimony, where it does not appear that the error affected the result or prejudiced the appellant, will not be cause for reversal. Willis v. Chambers, 8 Tex., 150; Atkinson v. Wilson, 31 Tex., 643; Morrison v. Laflin, 44 Tex., 17; Nicholson v. Horton, 23 Tex., 47.

The materiality of the testimony excluded was for the sole purpose of establishing the fact, so far as it might, that "Cross Timbers" was in fact a station at which accommodation trains were accustomed to stop for the convenience of passengers on said railway.

It is plain from the evidence (nor is the proposition controverted) that in truth "Cross Timbers" was not a station on said railway. There was no station-house or station-keeper, nor other incidents pertaining to a railway station. It was a mere siding at which trains might pass each other for the convenience of the railway company.

The instrument referred to as the "time-table" offered in evidence was a printed document purporting to be issued by the general superintendent of the International & Great Northern R'y Co., on the title-page whereof was indorsed as follows: "Time schedule No. 21, to take effect Sunday, October 3, 1875, for the government and information of the employees only. The company reserve the right to vary therefrom at pleasure." This printed document contained a ruled list (tabular) showing the times of arrival and departure of freight, St. Louis express and mixed trains at the stations specified. This schedule in-

dicated that the mixed train bound north was due at "Cross Timbers" at eight o'clock and five minutes A. M., and that the same bound south was due at that place at eight and twenty-seven minutes P. M., and that none of the other trains, according to said time-table, stopped there at all. As it was not pretended at the trial by the appellant that there existed other evidence to vary or change the effect of the "time-table," or in any respect to qualify that which it purported to be on its face, in reviewing the action of the court and jury in rendering verdict and judgment it is not possible to perceive that, had the rejected evidence been allowed, that a different result could properly have ensued. As has been made to appear, this time-table was an internal regulation intended for the regulation of the employees of the road; it was subject to change at its pleasure; and if the same had in fact never been practically enforced or put in operation by the superintendent of the road, neither third persons nor the public at large would have been entitled to reverse his determination by practically giving effect to it in the shape or by way of actions in damages for the non-fulfillment of the terms prescribed by such time-table.

The gist of the plaintiff's cause of action consists in the promise, expressed or implied, on the part of the railway company, to stop his train, provided the same were a mixed train, at "Cross Timbers," when requested to do so by the plaintiff; and the damage resulting in failure to perform that obligation he claims as the legal result of the breach of that promise. The evidence wholly fails to show such expressed promise, nor does the law imply such unless "Cross Timbers" was that which in fact it was not — a station.

The appellant virtually recognizes the correctness of this proposition and seeks to avoid its force by the implied obligation or undertaking to stop the train on which he had taken passage at "Cross Timbers," by rea-

son of the recitals contained in the time-table referred to. If by private contract to that effect, or by publication of notices, time-tables or other documents fairly and reasonably inducing a passenger to act thereupon in the purchase of his ticket, or the payment of his fare along the line of road, which would include such intermediate station, it would seem that a breach of the company's duty under such circumstances to stop its train at such place at the request of the passenger, would afford a just ground of action. But as applied to this case such facts are merely hypothetical. The time-table, as has been already stated, absolutely, pointedly, and apparently with emphasis, took pains to notify the public that the time-table thus published by them *was for the government and information of employees only*," and that "*the company reserved the right to vary therefrom at pleasure.*"

The testimony contained in the statement of facts did not show with definiteness what action had been taken under the new time-table by the company. The time-table on its face purported to take effect on the 3d of October, 1875. The cause of the alleged complaint transpired on the 11th of October of the same year; and whether the company at said last named date had put into effect the regulation to stop at "Cross Timbers" or not,.or whether, in the exercise of its reserved right to vary the programme as published, had, on the 11th of the month, so varied the same as not to require the stopping of mixed trains at "Cross Timbers," does not appear.

The plaintiff being the actor, the burden devolved upon him to make out a case of liability arising from contract express or implied; and the evidence, in connection with that which was excluded, does not impose, according to any proper interpretation which can be placed upon it, a legal duty, the violation of which can be punished with damages, to stop the defendant's train at "Cross Timbers" at defendant's request.

The time-table, had it been admitted, did not serve the purpose to establish an implied promise on the part of the company to stop the train that it otherwise would have been obliged to do under the general law, which required trains to stop at stations only. No additional force or advantage could have been gained, so far as we can perceive, to the plaintiff by the admission of the evidence which was excluded, especially in view of the limitations and conditions annexed to it, and to which reference has been sufficiently made.

It was urged on the trial below that the evidence referred to was admissible as an admission by the defendant of the fact that the regulation requiring trains to stop at " Cross Timbers," was an admission for the interest of whom it might concern of the fact that trains did and would stop at "Cross Timbers," notwithstanding the fact that it was issued for the government and information of employees only."

We do not conceive this ground to be tenable. Under the restrictions and limitations annexed to the instrument, it does not tend to prove an engagement by the defendant, and a corresponding obligation to the public, to run its trains any longer under the said schedule than it sees proper to do, nor that in point of fact does it tend to show that the defendant, at the time the plaintiff purchased his ticket, had put in operation and was enforcing the regulation in said time-table, which contemplated the stopping of mixed trains at " Cross Timbers."

As an admission of the fact that the defendant was at the time in question running its mixed trains to " Cross Timbers " on schedule time, and stopping there as at stations, the testimony offered will not be allowed as evidence of such fact, nor as tending to establish it, because the facts which were essential to constitute it such were contingent and conditional, and such evidence would have been remote. If it had been admitted, it cannot be supposed

that, when it was considered with all the other evidence in the case, the jury could have drawn an inference from it inconsistent with the evidence upon which they acted. The document offered was not, indeed, one which purported to admit that the company had proposed by it to run any of its trains so as to stop at "Cross Timbers;" it was at most but directions given by the superintendent to control the employees and operatives who were engaged in managing the machinery of the rolling stock of all grades and classes on the road, and those directions were subject to change and variation at pleasure. We think, therefore, that the ground urged by the appellant for the admission of the evidence is not maintainable.

.The third ground assigned as error is as follows: "The court erred in not granting us a new trial (after ruling out our evidence upon which we had relied to establish our case) when we presented the affidavits of witnesses Tally, Westcott and Koenig." The ground relied upon is in effect surprise on account of the ruling of the court upon a question of law. Held, that the supreme court will not grant a new trial on the ground of surprise, where it was the result of a misapprehension by the counsel of the law of the case. Phillips v. Wheeler, 10 Tex., 536.

Nevertheless in all cases of this kind the court may, in the exercise of a proper, sound legal discretion, grant a new trial where the ends of justice seems to demand it; and so it has been held that where a party shows reasonable care and diligence to provide himself with testimony to make out his case, and uses the ordinary caution of a prudent attorney in informing himself of the facts to which the witnesses will depose, and is then disappointed with the testimony of his witnesses, so that an injury will result, which may be remedied by another trial, a new trial will be granted. Delmas v. Margow, 25 Tex., 1.

And again, it is laid down that where it is evident, from all the facts attending the case, that by a ruling of

the court in the progress of the trial a party was cut off from trying his cause on the merits, or deprived of any other right, though in strictness the ruling may have been correct, yet it is made to appear that the default of the party was not inexcusable, and he presents a *prima facie* case of merits, he ought to be allowed a new trial. Chambers *v.* Fisk, 15 Tex., 335.

This application for a new trial is not brought sufficiently within these rules to entitle the plaintiff to a new trial. In the first place, the reliance alleged in the motion to have been exclusively placed on the evidence which was excluded in order to support the plaintiff's cause of action, was not made to appear by the party seeking the new trial, or by his counsel, in any mode which the court could recognize as a sufficient showing of that fact. The court could take no judicial notice of the existence of those matters which the motion indicates had dictated the preparation, management and direction of the trial in behalf of the plaintiff. It should have been sworn to. The facts stated in the exhibits attached to the motion (affidavits of Westcott and others) are quite inconclusive to show a state of case which would probably alter or change the result on another trial. Their statements were vague and indefinite as to the time when the facts and incidents related by them transpired, or from which it might be deduced that "Cross Timbers" was at the time inquired of in this suit a station in fact on said railroad.

The circumstances detailed did not exclude a reasonable inference that the stopping referred to, by some at least of the affiants, had been induced by special request, as by signaling and otherwise, rather than as the result of an established and regular custom of the trains of the defendant to treat the point in question as a regular stopping point at which passengers had a right to embark and debark.

We conclude that this ground of error is not well

taken. We agree that the remarks in appellant's brief, "that if the court did not err in excluding evidence, the charges, though erroneous, such error would be merely abstract." We do not deem it necessary, therefore, to consider the assignment of error which relates to the charge of the court.

Upon the merits of the case, under the facts disclosed in evidence, we conclude that the verdict and judgment was correct and is well supported by authority. It is laid down as incontrovertible law, that "it is the duty of a person about to take passage on a railroad train to inform himself when, where and how he can go or stop, according to the regulations of the railroad company; and if he makes a mistake not induced by the company, against which ordinary care in this respect would have protected him, he has no remedy against the company for the consequences." Ohio & Miss. R. W. Co. v. Applewhite, 52 Ind., 540; Pittsburg, Cin. & St. L. R. W. Co. v. Nuzum, 50 Ind., 141; Cheney v. The Boston & M. R. R. Co., 11 Met., 121; Boston & Lowell R. R. Co. v. Proctor, 1 Allen, 267; Johnson v. The Concord R. R. Co., 46 N. H., 213; Cleveland & C. R. R. Co. v. Bartram, 11 Ohio St., 457; Dietrich v. Penn. R. R. Co., 71 Pa. St., 436; Chicago & C. R. R. Co. v. Randolph, 53 Ill., 510; and see O. & M. R. R'y Co. v. Applewhite, 52 Ind., 540; 50 Ind., 141. "By his ticket a passenger acquires only the right to be carried according to the custom of the road; he has the right to go to the place which his ticket calls on any train that usually carries passengers to that place, but he cannot insist on being carried out of the customary course of the road." Chicago & Alton R'y Co. v. Randolph, 53 Ill., 511. In this case the plaintiff purchased his ticket to Houston without further inquiry as to the regulation then existing to stop at "Cross Timbers" than he may have ascertained or supposed to have been in force from seeing a time-table, published, as has

been seen, for the "government and information" of its "employees only." The plaintiff has failed to show that at that time the company was obliged, upon any principle of law applicable to this subject, to stop its train for his convenience at any other point than at some station between Waverly and Houston. The evidence failed to show that "Cross Timbers" was at that time such station, or that the company were then running mixed trains under a regulation given out to the public either expressly or from circumstances from which the public might conclude that mixed trains regularly stopped at "Cross Timbers" for the convenience of passengers.

We therefore conclude upon the whole case that the judgment ought to be affirmed.

AFFIRMED.

[Opinion delivered February 13, 1882.]

