## TEXAS & P. RY. CO. v. LUDLAM.

### (Circuit Court of Appeals, Fifth Circuit. June 27, 1893.)

#### No. 121.

**1. CARRIERS—RAILROADS—DUTY OF PASSENGERS.**

It is the duty of a person about to take passage on a railroad train to inform himself when, where, and how he can stop, under the regulations of the railroad company; and if he makes a mistake, not induced by the company, against which ordinary care in this respect would have protected him, he has no remedy against the company for the consequences. Beauchamp v. Railway Co., 56 Tex. 239, followed.

**2. SAME—DUTY OF CONDUCTOR.**

Where a train not scheduled to stop at a certain station is boarded by a person holding a ticket for such station, without informing himself as to whether he can stop there or not, the mere failure of the conductor to inform him, at the first opportunity, that the train cannot stop there, so that he can exercise the right to leave at any station he chooses, before reaching his destination, is not a breach of the company's obligation, so as to render it liable for damages caused to the passenger by being put off at the last preceding station, where he is subjected to great inconvenience and exposure. Locke, District Judge, dissenting.

**3. SAME—FAILURE TO STOP AT STATION.**

A person who boards a train, with a ticket to a given station, is entitled to be put off at that station, if the train usually stops there to receive or discharge passengers.

**4. SAME—RIGHT OF COMPANY TO STOP TRAINS ONLY AT CERTAIN STATIONS.**

In the absence of statutory regulations, a railroad company may adopt regulations that certain passenger trains, running regularly on its road, shall stop only at designated places, and it is the duty of an intending passenger to inform himself of such regulations.

In Error to the Circuit Court of the United States for the Eastern District of Texas.   Reversed.

Statement by PARDEE, Circuit Judge:

On the 24th of February, 1890, one Emma Ludlam bought a ticket at Texarkana for Stalls, a station on the Texas & Pacific Railway 58 miles south of Texarkana. She boarded the night train, which was passenger train No. 3, and which was a through train. She had with her four children; three of them being the children of her brother, James A. Ludlam, the defendant in error herein. She purchased no tickets for the children, nor did she pay any fare for them. Soon after leaving Texarkana, the conductor took up her ticket, and when the train arrived at Kildare, a station 45 miles south of Texarkana, and before it arrived at Stalls, he told her his train did not stop at Stalls, and that she would have to get off at Kildare. She asked to be put off at Lodi, a station between Kildare and Stalls, and the conductor told her the train did not stop at Lodi, either. When the train arrived at Kildare, Emma Ludlam, together with the children, were put off by the conductor, and they remained in the depot until the next morning at 9 o'clock, when they took the morning train to Stalls, paying 25 cents fare from Kildare to Stalls. This suit was brought by James A. Ludlam, father of three of the children who were with Emma Ludlam; and he sues, as next friend of said children, for damages for breach of contract to carry said children to Stalls that night, and for damages sustained by them for being compelled to remain at Kildare all night, in the cold, instead of being carried to Stalls. The defendant answered by a general denial; and, further, that the said children were passengers to Kildare, and not to Stalls, and did not offer to pay their way to Stalls, and therefore they had no right to be carried to Stalls, and, further, that said children were on the night train known as "No. 3," which passes Stalls about 11 o'clock at night, and

that said train did not stop at Stalls station, and that by a regular rule of the company, published, said train No. 3 was a through train, and did not stop at Stalls or Lodi, Lodi being the only station between Kildare and Stalls, and that the conductor of said train informed said children, and the person in charge of them, that the train would not and could not stop at Lodi or Stalls.

The evidence showed that, by a rule of the company, the night train (train No. 3) was not allowed to stop at Stalls, and it was for this reason that the conductor refused to stop at that station. Train No. 1, coming from Texarkana, stopped at Stalls about 10 A. M. Train No. 5, from Texarkana, stopped at Stalls at 5:43 P. M. Train No. 3, which passed Stalls at 10:50 P. M., was a through train from Texarkana to El Paso, and carried through sleepers, and it was the rule and regulation of the company that train No. 3 should not stop at Stalls at all. This rule was set out in the time cards, and by folders issued to the public. The case was tried on January 23, 1890, and resulted in a judgment for defendant in error for $500, from which judgment the plaintiff in error sued out and perfected this writ of error.

Plaintiff in error filed the following assignments of error: "(1) The circuit court erred in charging the jury as follows: 'If you believe the lady, Emma Ludlam, was on the train as passenger, and had a ticket from Texarkana to Stalls, and the conductor had allowed the children to travel with her without tickets, then it was the duty of the conductor, as soon as he found that she had a ticket to Stalls, to promptly inform her that the train did not stop at Stalls, so she could exercise the right to leave the train at any station she chose before reaching Kildare, her destination.' This was error, because the law does not impose upon the conductor the duty to inform a passenger that the train on which he is riding does not stop at a place named in a passenger's ticket, unless asked for. The charge was also error because there was no complaint in the pleading of his not telling her, and there was no evidence of any injury sustained by reason of his not telling her. (2) The court erred in charging the jury as follows: 'If you believe the lady had a ticket to Stalls, and the train upon which she was riding usually stopped at Stalls to take on or let off passengers, then it was the duty of the company to have carried her to Stalls that night, and they would be liable if they did not do so.' This charge was error, because it was proved that there was a rule of the company which forbade that train stopping at Stalls, and the custom of other trains stopping there could not vary the rule, or justify the conductor in violating said rule, and because the custom of other trains had not misled plaintiff. (3) The court erred in refusing the following charges asked by defendant: 'In this case, there being no improper treatment of the children, but only a refusal to carry them to Stalls, then, they having no tickets themselves, the only right to sue is in Miss Emma Ludlum, who had the ticket, and these plaintiffs cannot recover.' (4) The court erred in refusing the following charge asked by defendant: 'The evidence shows that the plaintiffs took passage on the train in question without making any inquiry as to whether the train stopped at Stalls, and the evidence shows that, by a rule of the company, that train was not allowed to stop at Stalls, and the conductor did right in not stopping that train at Stalls.' (5) The court erred in refusing the following charge asked by defendant: 'The jury are charged that a railway company may make rules governing their business, by which one of their trains may be a through train, and not stop at small way stations, and it is the duty of a person about to take passage on said train to ascertain if the train she is about to take will stop at the place of her destination; and, if a person boards a train that does not stop at the station of his destination, then the company may put the person off at the last station before they do stop before reaching the passenger's destination, and for such act the company would not be liable.' "

T. J. Freeman, for plaintiff in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge, (after stating the facts as above.) It is well-settled railway law that "it is the duty of the person about to take passage on a railroad train to inform himself when, where, and how he can go or stop, according to the regulations of the railroad company; and if he makes a mistake, not induced by the company, against which ordinary care in this respect would have protected him, he has no remedy against the company for the consequences." See Beauchamp v. Railway Co., 56 Tex. 239-249, and the authorities there collated.

The first assignment of error raises the question, when a person has taken passage on a railroad train not scheduled to stop at his destination, without previously informing himself when, where, and how he can go or stop, according to the regulations of the railroad company, and is therefore wrongfully on the train, whether it is the duty of the conductor to promptly inform him that the train does not stop at the station to which he is destined, so that he can exercise the right to leave the train at any station he chooses, before reaching the destination named in his ticket. In short, the question is, where a person is wrongfully on a train, will the silence of the conductor, until he is officially called to act, reverse the position,—put the passenger in the right, and the railroad company in the wrong? The conductor on a train has many and varied duties to perform, all under the regulations of the company which he is serving, and we are clearly of the opinion that, without proof to show that the conductor was authorized to vary the rules of the company in regard to the stopping of his train at a station not permitted under the rules, his mere silence, under the circumstances mentioned, cannot vary the obligation of the company in respect to the contract of carriage. In relation to this assignment, it is to be further noticed that the charge complained of is based upon an issue not made by the pleadings, relates to the recovery of damages not sued for, and is objectionable as conjectural. See U. S. v. Breitling, 20 How. 252-254.

The second error complained of is the charge to the jury, as follows:

"If you believe the lady had a ticket to Stalls, and the train upon which she was riding usually stopped at Stalls to take on or let off passengers, then it was the duty of the company to have carried her to Stalls that night, and they would be liable if they did not do so."

The evidence shows that the defendant in error's children were traveling upon a ticket sold by the company from Texarkana to Stalls. If the train, under the rules of the company, stopped at Stalls, the said children were properly on the train, and were improperly put off at Kildare. The rules of the company become known to the public by proper publications, advertisements, and custom. In the charge complained of, the word "usually" is to be taken and understood as meaning habitually or customarily, and we are not prepared to say the charge was erroneous. On the contrary, if a certain train usually, habitually, or customarily

stops at a certain station to take on or let off passengers, we are of opinion that the public may govern itself accordingly.

The third assignment of error, complaining of the refusal to charge the jury as follows: "In this case, there being no improper treatment of the children, but only refusal to carry them to Stalls, then, they having no tickets themselves, the only right to sue is in Miss Emma Ludlam, who had the ticket, and these complainants cannot recover,"—is not well taken, because, as we understand the suit, it is one to recover damages for improper treatment, as well as for violation of the contract of carriage.

The fourth and fifth assignments of error present the question as to whether a railroad company, in the absence of statutory regulation or prohibition, may adopt regulations that a certain passenger train or trains, running regularly on its road, shall stop at only designated places or stations, and that it is the duty of the person about to take passage on the railroad train to inform himself when he can go, and where he can stop, according to the regulations of the company. We think the law on this question is well settled in favor of the right of the company to make the regulations, and as to the duty of the passenger to take notice of them. See Beauchamp v. Railway Co., supra; 2 Wood, Ry. Law, § 356; Railway Co. v. Pierce, 47 Mich. 277, 11 N. W. Rep. 157. Regulations as to the running and stopping of trains are in fact absolutely necessary for the transaction of the company's business, and for the safety of the employes and passengers; and their violation, at the will of the employe, or for the convenience of the passenger, ought not to be tolerated. In the state of Texas there is no statutory provision, prohibiting railway companies from making such regulations; and the proof in this case is that, at the time of the matters complained of in this suit, there were three daily trains from Texarkana passing through Stalls. Train No. 1, passing Stalls about 10 o'clock A. M.; train No. 5, passing Stalls at 5:43 P. M.,—both stopping at Stalls; and No. 3, passing Stalls at 10:50 P. M.,—this latter being a through train from Texarkana to El Paso, carrying through sleepers, and, by the rules and regulations of the company, prohibited from stopping at Stalls. The proof further showed that this rule was shown by the time cards, and that circulars were issued to the public, advising them of the fact. Under the testimony, this was not only a reasonable regulation for train No. 3, on the part of the company, but was reasonable for the public, as Stalls is only a side track, with no houses, (the nearest house to the station being about a half mile,) and two trains stop there daily.

Under the law, and in this state of the proof, the trial judge erred in refusing the charges requested. The judgment of the circuit court is reversed, with costs, and this cause is remanded, with instructions to award a new trial.

LOCKE, District Judge, (dissenting.) I dissent from the view herein expressed, that it was not the legal duty of the conductor

to inform the passenger of the mistake she had made in taking a train not scheduled to stop at the station to which she had purchased a ticket, upon his first discovery of such a mistake, by taking up the ticket.