## ATCHISON, T. & S. F. R. CO. v. CAMERON.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1895.)

No. 404.

**1.** CARRIERS—DUTY TO STOP AT STATION—STATEMENTS OF TICKET AGENT.

Statements of a ticket agent that a certain train stopped at a certain station will bind the railroad company only when made contemporaneously with the sale of a ticket, and not when made several weeks before, and not referred to at the time the ticket was sold.

**2.** SAME—IMPLIED OBLIGATIONS.

Sale by a carrier of a ticket to a station on a connecting line creates no implied obligation that the train for which it is sold shall stop at that station, or that it will be reached without change of cars, or waiting at stations for other trains.

In Error to the United States Court in the Indian Territory.

Action by Nannie Cameron against the Atchison, Topeka & Santa Fe Railroad Company. Judgment for plaintiff. Defendant brings error.

Henry E. Asp (John W. Shartel, on the brief), for plaintiff in error.

W. O. Davis, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. Nannie Cameron, the defendant in error, brought an action against the Atchison, Topeka & Santa Fe Railroad Company, the plaintiff in error, in the United States court in the Indian Territory, to recover damages for its failure to stop one of its trains, on which she was a passenger, at Moore, a small station on its road in the territory of Oklahoma. She recovered a verdict, and the case comes to this court on a writ of error sued out by the defendant railroad company. In her complaint the plaintiff below averred that on June 4, 1891, she purchased from the agent of the Gulf, Colorado & Santa Fe Railway Company at Gainesville, Tex., a ticket entitling her to transportation from that point on the line of the Gulf, Colorado & Santa Fe Railway Company to Moore, a station on the line of the Atchison, Topeka & Santa Fe Railroad Company in Oklahoma territory; "that before purchasing said ticket * * * plaintiff caused inquiry to be made of defendant's agent at said Gainesville concerning the said train, and was assured and informed by said ticket agent that said train was a through train from Gainesville to Moore, and that the same would stop at Moore, and that she would have a continuous passage thereon from Gainesville to Moore without change of cars, and plaintiff, not knowing of any rule or regulation of the defendant to the contrary, believed said statements, and took passage on said train;" that she was subsequently compelled to leave said train at Norman, a point nine miles south of Moore, because the train did not stop at Moore, and that her health was impaired by leaving the train in a rain storm, and that she was also subjected to considerable expense, inconvenience, and delay. The facts disclosed by

the record are as follows: In May, 1891, the plaintiff resided at Belcherville, Tex., which is a town about 47 miles distant from Gainesville. Being in poor health, she was desirous of visiting her sister, who resided a few miles from Moore, in the territory of Oklahoma. About three weeks prior to June 4, 1891, the plaintiff's brother, while passing through Gainesville, called at the station of the Gulf, Colorado & Santa Fe Railway Company for the purpose of making inquiries with respect to trains running between that point and Moore. What occurred at that interview between the plaintiff's brother and the station agent will be best shown by the testimony of the former, which is all the evidence that we find in the record tending to show that an agent of the defendant company assured the plaintiff that the train on which she eventually took passage would stop at Moore. The testimony is as follows:

"Q. Who did you see when you got to Gainesville? A. I seen a good many people. I seen the ticket agent at the depot. Q. What agent? A. The ticket agent of the Gulf, Colorado and Sante Fe Railway Company. Q. What did you say to him with reference to your sister wanting to go to Moore? Did you state whether or not you asked that question in contemplation of buying a ticket for your sister? A. I did. Q. State the conversation between you and the agent? A. Well, I told him my reasons for coming to see him. I asked what train would be best for my sister to go on, as she was an invalid, and told him that if she could get a through train she could go to Moore without any of us going with her, and if she could not some of us would have to go with her. This was about three weeks before she went. He told me she could if she went on the ten o'clock train at night. That was why I sent her on that train. Q. Did you say to him that your sister was an invalid? A. Yes, sir; I told him that she was an invalid. Q. What did he say with reference to that train stopping at Moore? A. He said that if she took the day train she would have to lay over at Purcell. That was why we put her on the night train,—to save going with her. Q. When the ticket agent told you that the 10:30 train was a through train to Moore, and stopped at Moore, what did you then say to him with reference to your sister going to Moore? A. I don't remember what I really did say to him. I inquired about that train, and he told me that she could go through on that train. Q. Well, when you came back to Belcherville, did you report to your sister what the agent had said to you with reference to the train? A. Yes, sir."

Three weeks after the alleged interview, which is given above in the language of the witness, a brother-in-law of the plaintiff brought her to Gainesville, and purchased for her, from the station agent of the Gulf, Colorado & Santa Fe Railway Company at that place, a ticket from Gainesville to Moore. At that time there were only two trains per day by means of which persons could make the journey by rail from Gainesville to Moore over the lines of the Gulf, Colorado & Santa Fe Railway Company and the Atchison, Topeka & Santa Fe Railroad Company. One of these trains left Gainesville at 2:25 p. m., and arrived at Purcell, in the Indian Territory, the same evening at 6:40 p. m., where passengers were compelled to lay over until the following day before proceeding north. Another train, known as the fast through express from Galveston to Kansas City, passed through Gainesville at 10:30 p. m. daily, and arrived at Purcell, the terminus of the Gulf, Colorado & Santa Fe Railway, at about 3:15 a. m. the next morning. At that point the passenger and express cars of the train were taken up by a train of the Atchison, Topeka & Santa Fe Railroad Company, which left

Purcell for the north immediately on the arrival of the through train from the south. This train was not scheduled or advertised to stop at Moore, which was some 25 miles north of Purcell, and it did not stop at the former station except when it was necessary to do so to pass other trains. Passengers destined for Moore who came from points as far south as Gainesville could make the trip most expeditiously and conveniently by taking the through train leaving Gainesville at 10:30 p. m. This train arrived at Norman about 4 a. m. the next morning. At 7 a. m. a local train from the south stopped both at Norman and Moore, which enabled passengers who had left the through train at Norman to reach Moore about 8 a. m. There was a comfortable hotel at Norman, about 125 feet from the station. The station was also provided with an ordinary waiting-room. According to the testimony of the defendant's witnesses, passengers who desired to stop at Moore, who came from points a considerable distance south of Purcell, usually took the through evening train, and made the trip in the manner above indicated. unless it was found necessary for the through train to stop at Moore.

We have been favored by counsel for the plaintiff in error with an elaborate argument, which is intended to establish the proposition that the evidence as to what occurred between the station agent at Gainesville, Tex., and the plaintiff's brother, was inadmissible. It is contended, in substance, that the two corporations above mentioned were distinct legal entities, each under a different management, which bore to each other, at the date of the transaction in question, the same relations that are ordinarily borne by connecting railroads; also that a ticket agent who is merely authorized to sell coupon tickets over the line of a connecting road has no implied authority to make representations for the connecting carrier as to the movement of trains on its road. The view that we have felt ourselves compelled to take of the present case does not require us to determine what were the actual relations that existed on June 4, 1891, between the two carriers; and with reference to the powers of a ticket agent to bind his own company or a connecting carrier we are willing to accept the doctrine announced in New York, L. E. & W. R. Co. v. Winter's Adm'r, 143 U. S. 60, 12 Sup. Ct. 356, that what is said between a passenger on a railroad and the ticket seller of the company, at the time of the purchase by the passenger of his ticket, is admissible as going to make up the contract of carriage and forming a part of it. The case at bar proceeded upon the evident assumption that the agreement implied by law from the mere purchase of the ticket from Gainesville to Moore was qualified and enlarged by a special assurance given to the purchaser, by the station agent at Gainesville, that the train on which the plaintiff took passage on the evening of June 4, 1891, would stop at Moore. We think that the evidence was insufficient to show a modification of the implied obligation such as is above indicated. The conversation between the plaintiff's brother and the station agent, which is relied upon for that purpose, occurred, as before stated, three weeks before the ticket was purchased. It

was not called to the attention of the station agent by the plaintiff's brother-in-law, who purchased the ticket for her, and no inquiry was made at that time whether the train stopped at Moore. So far as we can discover, the station agent had no reason to suppose, when he sold the ticket, that it was bought by the plaintiff on the faith of representations that had been made to her or her brother three weeks previously; nor was there any evidence that the agent who sold the ticket and the agent who made the alleged representation were the same person. As no inquiry was made when the ticket was bought as to whether the train stopped at Moore, and as the alleged conversation with the plaintiff's brother was not called to the agent's attention, it must be held that it was too remote in point of time to alter the legal obligation of the parties incident to the purchase of the ticket. When, by means of oral statements made by a ticket agent, persons seek to enlarge the obligation which a railroad company assumes by selling a ticket, the proof should be confined to statements made by the agent contemporaneously with the purchase of the ticket. Hostetter v. Railroad Co. (Pa. Sup.) 11 Atl. 609. Ticket agents are not charged with the duty of determining at what stations trains shall stop for the discharge of passengers. They are not vested with an actual authority to control the movement of trains, either on their own road or connecting lines, and this fact is generally well known to the traveling public. Besides, railroad companies are in the habit of giving full information to the public as to the movement of trains on their respective roads by means of time cards and folders. We think, therefore, that if a connecting road is to be held liable in damages for representations made by a foreign ticket agent as to the movement and stopping points of trains on its road, which are incorrect, and differ from information given by its published time cards and folders, the liability should be limited to representations that are practically coincident with the purchase of the ticket. So far as we are advised, statements made by such agents that have heretofore been held admissible to impose a liability upon a connecting carrier, growing out of the sale of a ticket, are statements made to passengers in connection with the purchase of a ticket. New York, L. E. & W. R. Co. v. Winter's Adm'r, 143 U. S. 60, 69, 12 Sup. Ct. 356. It is also worthy of notice in this connection that the station agent at Gainesville evidently gave the plaintiff's brother correct information as to the train that it would be best for the plaintiff to take to reach her destination with the least inconvenience and delay. It is not shown by the testimony that the agent stated that the night train stopped at Moore. He represented it to be a through train, as it was ordinarily called; but, even if it be conceded that he was probably understood to mean that it stopped at Moore because he termed it a through train, still we think that, if the plaintiff had been fully advised of the situation before she left Gainesville, she would most likely have taken the night train, and that the false information complained of did not, in fact, cause her to take a different train than she would otherwise have taken.

It only remains for us to consider whether, without reference to the verbal representations said to have been made, the defendant company was nevertheless under an implied obligation to stop the through express train at Moore, because its agent for the sale of tickets sold the plaintiff a ticket entitling her to be carried from Gainesville to Moore. The law seems to be well settled that when a railroad company sells a ticket from one point to another on its own line, it simply engages to carry the passenger to his destination in the customary way, according to such reasonable rules and regulations as it has adopted for the running of its trains. In the absence of a special contract to that effect, a passenger has no right to require a train to stop at a particular station where, according to the regulations of the company, it is not scheduled to stop, and does not ordinarily stop. Railroad companies are bound, of course, to make reasonable running arrangements for the accommodation of the traveling public, but that does not mean that all passenger trains must stop at all stations, or that trains must be so scheduled and run as to enable each passenger to make a continuous trip. So long as a railroad company furnishes reasonable facilities for reaching all stations on its line, passengers who desire to stop at a particular station should take trains that usually carry passengers to that place. Railroad Co. v. Randolph, 53 Ill. 510; Plott v. Railway Co., 63 Wis. 511, 516, 23 N. W. 412; Railroad Co. v. Bills, 104 Ind. 13, 17, 3 N. E. 611; Duling v. Railroad Co., 66 Md. 120, 6 Atl. 592; Matthews v. Railway Co. (S. C.) 17 S. E. 225. We think, therefore, that the sale of the ticket from Gainesville to Moore did not in itself obligate the defendant company to stop the through express at the latter station, and that the sale of the ticket was not in itself an assurance that the plaintiff would be carried through to her destination on that train without change of cars. It results from the foregoing views that there was not sufficient evidence to warrant a verdict in favor of the plaintiff, and the court below should have so instructed the jury. For its failure to give such instruction, as it was requested to do by the defendant company, the judgment of the lower court is reversed, and the cause is remanded, with directions to award a new trial.