KYLE v. CHICAGO, R. I. & P. RY. CO. (two cases)

(Circuit Court of Appeals, Eighth Circuit. October 19, 1910.)

Nos. 3,386, 3,387.

1. CARRIERS (§ 264*)—PERFORMANCE OF CONTRACT FOR CARRIAGE OF PASSENGERS —TRAIN SERVICE OF RAILROAD.

A railroad company has the legal right to make reasonable rules and regulations for the running of its trains and the carriage of passengers thereon, and it incurs no legal liability because in following such reasonable regulations and train schedules it does not stop its through or limited

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trains at all stations, especially when it is not shown that it does not afford to the public adequate facilities for travel upon its road.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1037–1039; Dec. Dig. § 264.*

Duty to stop trains at station, see note to Atchison, T. & S. F. R. Co. v. Cameron, 14 C. C. A. 362.]

2. CARRIERS (§ 271*)—CARRIAGE OF PASSENGERS—TRAIN SERVICE.

Plaintiffs purchased tickets from the agent of defendant railroad company for a station on its line, explaining that a relative residing there was ill and not expected to live, and that they desired to take an evening train, which they were told by the agent passed such station early in the morning. They were told by the conductor that the train did not stop at such station, and that he could not stop, but that they could, by stopping off at an intermediate station, take a local train using the same tickets and reach their destination before 9 o'clock in the morning. They declined to do this, but paid their fare to a station beyond, from which they did not get a train back until the following evening, arriving after their relative had died. Had they followed the conductor's instructions, they would have arrived before their relative died and in the shortest possible time from their starting point. No deceit or misrepresentation was charged. Held, that such facts did not constitute a 'cause of action against defendant for the recovery of damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1067–1071; Dec. Dig. § 271.*]

3. DAMAGES (§ 49*)—GROUNDS—MENTAL SUFFERING.

It is the settled rule of the federal courts that mental anguish alone, not arising from some physical injury or pecuniary loss caused by the negligent or other wrongful act of another, is not a basis for an action for damages in the absence of a statute authorizing such a recovery.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 100; Dec. Dig. § 49.*

Mental suffering as an element of damage in general, see note to Chicago, R. I. & P. Ry. Co. v. Caulfield, 11 C. C. A. 556.]

In Error to the Circuit Court of the United States for the Western District of Arkansas.

Action by E. P. Kyle against the Chicago, Rock Island & Pacific Railway Company, and by G. B. Kyle against the same. Judgments for defendant, and plaintiffs bring error. Affirmed.

See, also, 173 Fed. 238.

Oscar L. Miles, for plaintiffs in error.

Thomas S. Buzbee and George B. Pugh, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and REED, District Judge.

REED, District Judge. These cases rest upon the same facts, were consolidated and tried together, are presented to this court on the same record, and may be considered and determined as one case.

The facts as disclosed by the evidence are: That on June 26, 1908, the plaintiffs, who then resided at Magazine, a village or town in Western Arkansas upon the line of defendant's railroad in that state, received a letter from Wecharty, Okl., that a brother of one of the plaintiffs and uncle of the other, who resided at or near Wecharty, was sick and not expected to live. Upon receipt of this letter, the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiffs began preparations to go to their sick relative and went to the agent of the defendant company in Magazine and informed him that they desired to start upon the evening train from Magazine to Wecharty. The agent informed them that Bilby, a station on defendant's road in Oklahoma, was the same place as Wecharty, and that the train was scheduled to pass there about 2 o'clock in the morning. They purchased tickets from Magazine to Bilby and took passage upon the train which left Magazine about 6:30 in the evening of that day and scheduled to pass Bilby about 2 o'clock the next morning, but not to stop there. At Boonville, the first station seven miles west of Magazine, the crew of the train changed, and shortly after leaving that place plaintiffs presented their tickets to the train auditor or collector when he called for them, and were then informed for the first time, as they say, that the train did not stop at Bilby. They informed the train auditor of their purpose in going to Bilby and their desire to reach there as early as possible, and requested that the train be stopped at Bilby that they might alight from it there, but were informed by the train officials that they had no authority to stop the train; that it was not scheduled to stop at Bilby, and they could not stop there; that the way for them to reach Bilby was to leave the train at McAlester about midnight, or at Calvin a little later, and from either of these places they would get a local train scheduled to leave McAlester about 7 o'clock in the morning, and arrive at Bilby about 8:50 a. m.; that their tickets were good upon this local train from McAlester to Bilby. This was the usual and customary way for passengers on this through train from points east of McAlester destined to Bilby to reach their destination. Bilby is a small station with only a post office, one store, a small cotton gin, and three or four families. The plaintiffs refused to act upon the suggestions or advice of the train officials, but continued on the train to Holdenville, a station six miles beyond Bilby, at an additional expense to each of 12 cents railroad fare, which they voluntarily paid, expecting to get a train back to Bilby early in the morning. For some reason they were unable to do so and did not get a return train until about 6 o'clock in the evening. They stayed in Holdenville all day, returned upon an evening train, and arrived at Bilby about 6:40 p. m June 27th. The relative died about noon of that day. The train upon which the plaintiffs took passage from Magazine was known as No 41, was a through train from Memphis west bound to some point in Oklahoma, and after leaving McAlester ran as a fast train, scheduled to stop at only a few stations, and not at small places like Bilby. From McAlester there were two local trains a day west bound which carried passengers, one leaving about 7 o'clock in the morning arriving at Bilby at 8:50 a. m., the other arriving at Bilby about noon or shortly thereafter; and two from the west which stopped at Bilby, one at 1:20, and the other at 5:35, both in the afternoon. The next train west bound from Magazine after No. 41 was due to leave Magazine about 8 o'clock in the morning of June 27th; but passengers leaving Magazine upon this train would not arrive at Bilby until 8:50 a. m. of the next day as we understand the evidence, or 24 hours later than those leaving the evening before on No. 41. Each of the plaintiffs sued

the defendant for alleged mental anguish suffered by him because he was thus prevented from seeing his dying relative before his death, claiming as actual damages $5,000, and $5,000 as exemplary damages because of the alleged willful and wrongful acts of defendant's employés in refusing to stop the train at Bilby. The defendant denied any negligent, willful, or other wrongful acts upon the part of its employés and contends that if plaintiffs had followed the suggestions or advice of its train officers they would have reached Bilby upon its train scheduled to arrive and stop there at 8:50 in the morning of June 27th, nearly three hours before the death of their relative. At the close of all of the evidence the court upon its own motion directed a verdict, and rendered judgment, in favor of the defendant, and the plaintiffs bring error.

Each of the plaintiffs rests his right to recover solely upon the ground that because the defendant sold him a ticket from Magazine to Bilby and allowed him to take passage upon one of its through trains not scheduled to stop at Bilby, that it was its duty to stop the train and let him alight at that place. But it is admitted, and properly so, in the brief filed in behalf of the plaintiffs, that it is, and was, the right of the defendant to make reasonable rules and regulations for the running of its trains and the carriage of passengers thereon, and that it was not required to stop its through or limited trains at all stations upon its line of road if it otherwise provides reasonable facilities for the public to travel to and from such stations. Atchison, T. & S. F. R. Co. v. Cameron, 66 Fed. 709, 14 C. C. A. 358. It follows as a corollary that the defendant had the legal right to run its trains under the regulations and upon the schedules so established, and that it incurs no liability in doing so, especially in the absence of allegations and proof that they were unreasonable and did not afford to the public adequate facilities for travel upon its road. There is neither allegation nor proof in this case that the rules and regulations established by the defendant, and the schedules upon which its trains were run from Magazine to Bilby and beyond, were unreasonable and did not afford ample facilities and accommodation to all who might desire to reach and depart from the station at Bilby. The authorities cited in behalf of the plaintiffs are those in which passengers having tickets which entitled them to ride as such upon a given train were wrongfully ejected therefrom by the train men in charge. They are inapplicable here, for these plaintiffs were not ejected from the train, but were permitted to continue thereon to their destination and to the station beyond; each voluntarily paying the additional fare to that station. These actions are not for deceit or misrepresentation on the part of the company in selling the plaintiffs tickets to a station at which the train upon which they were to take passage did not stop; on the contrary, each petition alleges:

"That plaintiff went to the station at Magazine and explained to the agent his desire and purpose to take the evening west-bound train at Magazine so as to reach Bilby at the earliest possible moment."

The plaintiffs each so testified, but do not say that the agent assured them or even told them that the train would stop there; and the proofs show that the next train west from Magazine left the fol-

lowing morning about 8 o'clock, but would not reach Bilby, certainly until afternoon of that day, and, as we understand the evidence, not until 8:50 in the morning of the 28th, or 24 hours later than they would arrive under the schedules then in effect by taking passage upon train No. 41 as they did. Had they been refused passage upon train No. 41, they might well have said that they were prevented by defendant from reaching the bedside of their relative before his death, for they could not possibly then have reached him before he died; but, by taking passage as they did upon train No. 41, they could have reached Bilby upon the regular train from Magazine, scheduled to arrive and stop at Bilby at 8:50 in the morning of June 27th. Each plaintiff sues alone for the mental anguish he claims to have suffered because he was prevented from seeing his dying relative before his final dissolution. If either suffered any such anguish, it was solely because of his refusal to act upon the suggestion or advice of the train officials to leave the train at McAlester or Calvin and take the regular train scheduled to arrive from Magazine and stop at Bilby at 8:50 in the morning of June 27th, and, if they had acted upon such directions, they would not have been deprived of the privilege they now claim was so dear to them. But aside from this there is not a word of evidence that either suffered any mental anguish because he did not see the dying man before his death; nor is there any fact shown upon which it could be found that either suffered any, save alone the fact of the blood relationship existing between him and his relative. Surely the court cannot judicially know that a brother or nephew of a dying man would suffer great mental anguish because he was prevented from seeing him so short a time before his death; or, if he would suffer any, the extent of such suffering. Neither is there a scintilla of evidence that the trainmen were actuated by the slightest ill will towards either of the plaintiffs in refusing to disobey their orders and stop the train at a place where they were not authorized to stop it. There is no possible ground, therefore, upon which a verdict or judgment for more than nominal damages could have been sustained against the defendant, admitting, without deciding, that it is liable to the plaintiffs for not stopping the train at Bilby. But the judgment of the Circuit Court need not be, and is not, made to rest upon this ground, for it is settled in this jurisdiction that mental anguish alone, not arising from some physical injury or pecuniary loss caused by the negligent or other wrongful act of another, is not a basis for an action for damages in the absence of a statute authorizing such a recovery. Western Union Tel. Co. v. Burris (C. C. A.) 179 Fed. 92. And see Rowan v. Western Union Tel. Co. (C. C.) 149 Fed. 550. And no such statute is relied upon by the plaintiffs for a recovery.

The judgment of the Circuit Court in each case is affirmed.