OHAGE v. NORTHERN PAC. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.    October 28, 1912.)

No. 3,744.

1. CARRIERS (§ 267*)—TRANSPORTATION OF PASSENGERS—OPERATION OF TRAINS —RULES.

A railroad company may lawfully make reasonable rules and regulations for the operation of its passenger trains, the reasonableness of which is a question of law, when the circumstances which bring them about are not in dispute.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 994–996; Dec. Dig. § 267.*]

2. CARRIERS (§ 264*)—TRANSPORTATION OF PASSENGERS—REGULATIONS—ADEQUATE SERVICE.

Where adequate local passenger traffic has been established by a carrier between two localities, a regulation that another train shall not engage in such traffic is a reasonable one.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1037–1039; Dec. Dig. § 264.*]

3. CARRIERS (§ 264*)—TRANSPORTATION OF PASSENGERS—REGULATIONS.

A carrier's regulation for the operation of a limited train may reasonably permit the discharge of passengers at a particular station, and yet prohibit the taking on of passengers there.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1037–1039; Dec. Dig. § 264.*]

4. CARRIERS (§ 264*)—RAILROADS—FOLDERS.

Folders issued by a railroad company, containing schedules provided for the operation of passenger trains, are not issued in the performance of any statutory or public duty; and hence the railroad companies issuing them are not required to adhere to the schedules appearing in the folders merely because they remain extant and in circulation.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1037–1039; Dec. Dig. § 264.*]

5. CARRIERS (§ 251*)—CARRIAGE OF PASSENGERS—OPERATION OF TRAINS—INFORMATION FROM AGENT.

Where, pursuant to a carrier's regulations, a limited train did not take on passengers at a station where plaintiff desired to board it, a question, asked by plaintiff of the agent at such station, whether the Limited was on time, to which the agent replied in the affirmative, was not an intimation that plaintiff would be accepted as a passenger on such train.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1014, 1026; Dec. Dig. § 251.*]

6. CARRIERS (§ 251*)—TRANSPORTATION OF PASSENGERS—STATEMENT OF AGENT.

Plaintiff, believing that he could ride on defendant's limited train, went to defendant's station shortly before train time, and, being informed by the agent that the Limited was on time, attempted to board the train, but was prevented from doing so because of a regulation withdrawing that train during the summer from local traffic between that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

station and the plaintiff's destination. *Held* that, since plaintiff's situation was not caused or changed by the agent's response, the carrier was not rendered liable to plaintiff for damages by reason thereof.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1014, 1026; Dec. Dig. § 251.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by Justus Ohage against the Northern Pacific Railway Company. Judgment for defendant, and plaintiff brings error. Affirmed.

John W. Willis, of St. Paul, Minn. (Emil W. Helmes, of St. Paul, Minn., on the brief), for plaintiff in error.

Charles Donnelly, of St. Paul, Minn. (Charles W. Bunn, of St. Paul, Minn., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and McPHERSON, District Judge.

HOOK, Circuit Judge. Justus Ohage brought an action against the Northern Pacific Railway Company for being denied admission to one of its passenger trains. At the conclusion of the evidence the trial court directed a verdict for the company, and he prosecuted this writ of error.

The plaintiff, who is a physician and surgeon of St. Paul, Minn., desired to visit a patient at the village of White Bear, about 12 miles distant. Personal business of importance required his return by a certain time in the evening, in order to make a railroad connection to another place. This was May 27, 1909. He obtained from a hotel in St. Paul a Northern Pacific folder dated April 1, 1909, and found from it that he could leave St. Paul in the afternoon, have time to attend his patient, and, returning, could take the Duluth Limited, scheduled as departing from White Bear for St. Paul at 6 p. m. The folder showed that the train carried passengers locally between the two points; also that the company reserved "the right to vary therefrom without notice." The plaintiff planned and acted accordingly, as the due time of the Limited at St. Paul would enable him to make his connection and keep his business engagement. He went to White Bear, made his professional call, and repaired to the station shortly before 6 o'clock. He asked the agent if the Limited was on time, and was informed it was. The train came in, discharged some passengers, and took on some express. The plaintiff sought to enter, but was prevented from doing so, first by a brakeman and then by the conductor. He was informed by them that the train did not carry passengers from White Bear to St. Paul. He missed his connection at the latter city, and the engagement mentioned.

In his petition he claimed damages for loss in his business, for the indignity and humiliation in the presence of people on the railroad platform, and for personal violence of the trainmen. The latter may be dismissed from further notice, as there was no evidence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

at the trial that the trainmen offered more resistance than was necessary to prevent him from boarding the train. The Duluth Limited had for years been running through White Bear to St. Paul at the time scheduled in the folder, and it had been the practice of the company to carry passengers on it locally between those places part of each year, but not during the period commencing some time in May and ending in the autumn. White Bear is a lake resort, and the patronage in the excepted season being considerable, and at the same time variable, the company established and maintained a suburban service. The Limited was withdrawn from the local service, though passengers from beyond were allowed to alight there. Accordingly on May 23, 1909, four days before the plaintiff's trip, the company put into effect a time-table showing that the train in question would not carry passengers locally between White Bear and St. Paul. Of this, however, plaintiff was not aware. Before leaving St. Paul, he inquired at the information bureau in the Union Station as to the time of departure of a train for White Bear, but did not inquire about a train for return. There is no contention in the case that White Bear was not adequately served by the company aside from the limited train. Ten or twelve trains were engaged in that service. Indeed, a train left White Bear for St. Paul about half an hour before the Limited, another at 7:20 p. m., and still another at 8:30; but neither of the latter two would have enabled plaintiff to make his connection at St. Paul. The proof of the publication of the new time-card of May 23d is scant; but it is clear that it had been adopted and was in actual operation for several days before May 27th. Under these circumstances, did the plaintiff have a right to board the train?

[1] A railroad company may lawfully make reasonable rules and regulations for the running of its trains and the carriage of its passengers. Whether a particular regulation is reasonable is a question of law, when the circumstances which bring it about are not in dispute.

[2] When adequate facilities for local passenger traffic between two localities is otherwise provided, a regulation of a railroad company that another train shall not engage therein is a reasonable one. These principles are well established. Kyle v. Railway, 105 C C. A. 151, 182 Fed. 613; Atchison, etc., R. Co. v. Cameron, 14 C. C. A. 358, 66 Fed. 709; Texas & P. R. Co. v. Ludlam, 6 C. C. A. 454, 57 Fed. 481. The importance and propriety of such regulations in the conduct of the railroad business is recognized in the cases in which it is held that, when a railroad company has provided adequate service for localities within a state, a state law requiring it to add to such service a through or limited train engaged in interstate commerce, may be void. The law is held invalid when it operates as a burden on or to the detriment of such commerce. Herndon v. Railway, 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970; Atlantic Coast Line v. Wharton, 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230; Mississippi Railroad Commission v. Railroad, 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209.

[3] A regulation may permit the discharge of passengers from a train at a locality, and yet there may be good reasons growing out of the character of the patronage, as is the case here, why others should not be taken on; and, to avoid discrimination, a regulation should be general within the scope of its operation, and not depend upon the accident of the particular occasion.

[4] Folders are voluntarily issued by railroad companies for the information of the public, and not by reason of any statutory requirement or public duty. It would be impracticable to recall and destroy an entire issue when changes are made in train service, and from abundance of caution it is customary, though perhaps not the invariable practice, for them to insert a statement in their folders that the right is reserved to vary therefrom without notice. Such a statement appeared in the folder the plaintiff consulted. Railroad companies are not held to adhere to the schedules appearing in their folders merely because they remain extant and in circulation. They must and do frequently change the service of their trains to adjust their business to conditions as they arise, and it is common knowledge that information thereof can be obtained of ticket agents and in large cities at information bureaus established for the purpose. The plaintiff himself, though he had procured a folder, inquired of the information bureau in St. Paul when a train left after 2:15 in the afternoon for White Bear; but he made no inquiry when he could return, or whether he could return on the Limited.

[5] It is contended that the reply of the agent at White Bear that the Limited was on time, in response to his question, was a "direct intimation" of his right to ride on it. We think the incident had no necessary pertinence to the right asserted. Such questions are asked from a variety of motives, and it was not for the agent to ask him in return why he wanted to know. There was no apparent implication that the plaintiff expected to take the train for St. Paul.

[6] But, were it otherwise, the plaintiff's situation was not caused or changed by what the agent said, even if it be assumed he could bind the company under the circumstances. There was no error in the rulings of the court upon the evidence pointed out in the assignments.

The judgment is affirmed.