# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## R., F. & P. R. R. Co. *v.* ASHBY.

### May 8, 1884.

1. RAILROAD COMPANIES—*Passengers.*—When a railroad company has sold a passenger a ticket to a particular station it has no right to refuse to stop its train there, and is liable for such refusal. And a ticket from one designated station to another is good for any intermediate station at which, by the regulations of the company, the train regularly stops.

2. IDEM—*Idem—Case at Bar.*—Just before the arrival of a train A. buys a ticket to B. station, enters the train, and is told by the conductor that it did not stop at B.; A. asks to be put off at R., a station short of B., where the train had to stop; but the conductor tells him he could not travel on that train on that ticket; stops the train at C. bridge, which was short of R., and in a low marsh, and in the afternoon, in a drizzling rain and eastern storm, against A's consent, puts off A., who was then sick, and had to walk three miles to his destination, in consequence of which exposure and fatigue A. became ill, was laid up two months, and lost his position, with his salary of $600 a year. At the trial of his action against the company for damages the jury allows him $500. The company moves to set aside the verdict, as contrary to the law and the evidence, excessive and punitive. The court below overrules the motion, and defendant excepts. On error

HELD:

1. The verdict is sustained by the law and warranted by the evidence.

2. Plaintiff was not only entitled under the circumstances to damages to the extent of the actual injury, but it was a proper case for exemplary damages.

Error to judgment of circuit court of Prince William county, rendered 11th May, 1880, in an action of trespass on the case,

wherein Robert Ashby was the plaintiff, and the Richmond, Fredericksburg and Potomac Railroad Company was the defendant. Verdict for plaintiff for $500 damages. Defendant moved to set it aside. The court overruled the motion, and entered judgment according to the verdict. And the defendant having excepted, obtained from one of the judges of this court a writ of error and *supersedeas.* Opinion states the case.

*H. R. Garden,* for the plaintiff in error.

*W. H. Payne,* for the defendant in error.

Lacy, J., delivered the opinion of the court :

Robert Ashby, the defendant in error, and the plaintiff in the circuit court, brought this suit in the circuit court of Prince William county on the 14th day of August, 1877, against the Richmond, Fredericksburg and Potomac Railroad Company, alleging that the defendant company, running its cars on the track of its road in the said county between Quantico and Richland, two stations upon the said road in the said county, for an agreed price, undertook to carry the said plaintiff as a passenger upon the said railroad from Quantico to Richland, and issued to the plaintiff a ticket in accordance with the said agreement or undertaking of the said company. That after entering the said company's railroad train at Quantico, and before reaching the station at Richland, the defendant, without lawful authority, with force and arms ejected the said plaintiff from the said railroad cars of the company ; that the plaintiff was sick at the time with malarial fever ; that the sickness of the plaintiff was thus aggravated, and increased suffering and great pecuniary loss were thus caused to the plaintiff. The defendant company pleaded not guilty and *non-assumpsit,* upon which issue being joined, the jury found for the plaintiff and assessed his damages at $500. The defendant moved the court to set aside

the said verdict and grant a new trial; which motion the court overruled, and entered judgment for the plaintiff accordingly.

Whereupon the defendant company excepted and applied to this court for a writ of error and *supersedeas*, which was awarded on the 2d day of July, 1880, by one of the judges of this court.

The evidence shows that in October, 1876, the plaintiff, being employed and engaged in getting lumber on Aquia creek in the county of Stafford, and being then a resident two and one-half miles from Quantico, was instructed by his employer to go to Aquia and have a schooner loaded with lumber to be shipped to the city of Philadelphia. That the said plaintiff had to return to Brooke's station near the mouth of Aquia creek, and his employer gave him a railroad ticket from Quantico to that point, which was produced to the court, and upon which was printed, "Richmond, Fredericksburg and Potomac Railroad Company, from Quantico to Brooke's station," and upon which was written, "October 23, 1876," and no signature was appended thereto. But said ticket was duly stamped and pierced by the agent who sold it. That the plaintiff got on the train of the said company at Quantico, in the afternoon of the day. That the defendant's conductor made no objection to the said ticket, but told him the train did not stop at Brooke's station. The plaintiff then told the said conductor that he knew that, but that he wanted to get off at Richland at which the train did stop, and which was some miles this side of Brooke's station. That the conductor told him that he could not so travel on that train and that he must get off; did not explain why, but told him if he did not get off, he would put him off. That the conductor was peremptory and came into the car with another hand, the plaintiff being in no condition to resist, when the train drew up at Chappawamsie drawbridge, about three miles from Richland, finding that he would be put off at that point, to avoid insult and violence, which were about to be used, he got off. He was sick with malarial fever, and had to walk to Richland, reaching there about dark in a cold, drizzling rain and eastern storm,

was taken sick again from this exposure and hardship. That he did not get the schooner loaded for that reason, the vessel was frozen up, the lumber rotted, and he lost his employment, &c.

There were only six passengers on this train, and it stopped that day at Richland, after the plaintiff had been put off. The plaintiff told the conductor he was sick, and asked him, as he had only four miles to run to his stopping place, not to put him off in a swamp, that it was a low, flat marsh, and the nearest house was a mile and one-half off. When this train got to Richland that evening, the said conductor stopped and got off, and boasted that he had just put a man off at the said bridge because he had a ticket that was not signed. No passenger got off at Richland that evening, and the train stopped without being flagged. It is admitted by the company that the ticket was good, but not for the train in question, that being an express train which did not stop at Brooke's station.

There is no pretence that the company, or its agents, told the plaintiff not to get on the train in question, or gave him any warning whatever concerning the same when the ticket was sold to him.

Passengers who are being lawfully carried in public conveyances have thrown around them the best protection which the law can afford them, in the high degree of responsibility for care and diligence which the law imposes upon the carrier.

A passenger's ticket is both a receipt and a contract. It is the acknowledgment of the receipt of the passenger's fare, and the obligation to carry him for the purposes and upon the terms specified.

Such tickets are of universal use in railroad travel, and almost every question which can arise concerning the use of such tickets, the rights of the passenger under them, and the duties of the carrier concerning them, has been often the subject of judicial investigation and decision in the courts. The duties of the conductors and the corresponding responsibilities of the

carrier, have been often considered and passed upon, and where by a regulation of the company the conductor has been required to do any act, the conductor has been held excusable, while the company has been held responsible for resulting injury. And so, when the passenger had paid for and obtained, as he supposed, a ticket which entitled him to his passage to his destination, but which by a mistake of the company's agent from whom it was purchased, only entitled him to be carried to a point short of such destination, and after he had been carried beyond the place designated in the ticket, and before reaching that to which he had really contracted and paid to be carried, he was ejected because the ticket did not entitle him to be carried further, it was held that the conductor had performed his duty, and that as between him and the passenger the ticket was conclusive, but that the company was liable to him for damages for the eviction, by reason of the mistake of its ticket agent. *Frederick* v. *The Railroad*, 5 Central Law Journal, 476; see also *Bennett* v. *The Railroad*, 5 Hun. 599; *Downs* v. *The Railroad*, 36 Conn. 287; *Shelton* v. *The Railroad*, 29 Ohio St. 214.

It is true that if the ticket is used, it must be used as an entirety; that is, a passsenger cannot use a ticket for a part of the journey one day or at one time, and then at another time, use the same ticket for the residue of the stipulated journey, contrary to the company's regulations. And it may be conceded also that the company has a right to make such regulations as may appear right as to the running of its trains and the points along the route at which the same are to stop. But the company has no right to sell a passenger a ticket for a particular station and then refuse to stop at that station; and the act of the ticket agent in selling such ticket to a passenger is the act of the company, and if the conductor refuse to allow the passenger to disembark at such station for which he holds a ticket, if he obeys the company's regulation, he is exonerated, but the company is responsible for the act of the agent who sold the ticket, and wrongfully received the money for it. So it may

be conceded that if a passenger buys a ticket which is not good on a certain train and he insists on riding on that train, he is not riding under his contract, which was that he might ride on other trains. *Dietrick* v. *Penn. R. R. Co.*, 3 Mallory Am. R. Rep. 434, and other cases there cited.

And also it has been decided, as we have stated above, that if the passenger bought a ticket between two points, and the train was not allowed by the company's regulation to stop at the named destination, and he made a mistake in the use of the ticket *which was not induced by the company*, the company would not be responsible if he was carried beyond his destination, when the conductor told him the train did not stop at the named destination. *Pittsburg, Cin. and St. Louis Railway Co.* v. *Nuzum*, 50 Ind. 141.

But if, under such circumstances, the conductor had forcibly ejected the passenger from the train before he had reached his stated destination, it would not appear to be within the scope of that decision, and others cited as supporting it.

But in the case at bar, the questions involved do not seem to have passed under review in any case to which we have been referred, or to any which have come under our inspection. Such a case as this cannot occur often on any well-regulated railroad ; and this case must be considered and decided upon its own peculiar circumstances.

The passenger, just before the arrival of a railroad train, applies for, and buys for an agreed price, a ticket to a particular destination or designated station. He does not insist on stopping the train at any place not named in the schedule, or at which, by the company's rules, it is forbidden to stop ; nor does he insist on riding beyond the point to which he has paid to be carried, but requests only to be allowed to ride to a station at which that train must stop under the company's regulations, and which is not beyond the named station, but which is reached before the named station is reached. The company after selling him his ticket, and receiving the agreed price of

the same, not only refuses to recognize it according to its terms as contrary to its regulations for that train, but refuses to allow him to use it for a shorter distance, and stops the train in a low swamp in the afternoon, when night is coming on, with no habitation near, and puts this sick man off in the midst of a drizzling rain in an eastern blow or northeastern storm, exposure to which upon our shores is so fraught with sickness and suffering. And what reason was there for this other than such as appears wanton and cruel? The company could not have been injured by his remaining on the train to the station at which the train stopped, four miles beyond; nor could the company nor its officers have been in any degree inconvenienced thereby. The train was not crowded, only six passengers therein, the distance short, and less than he had paid to travel.

Can it be considered that this company can justify this harsh treatment upon one of its passengers? The carrier's duty is to carry his passenger safely and properly and respectfully, and if he entrusts this duty to his servants, the law holds the carrier responsible for the manner in which they execute the trust. In a case like this, the carrier is not only responsible for the actual injury which the passenger sustained from the ill treatment of the servant, but it is a proper case for exemplary damages. In this case the jury assessed the damages of the plaintiff at $500, and the court is asked to set aside the verdict as excessive. The jury was controlled doubtless by the peculiar circumstances of the case, and when they are considered, they do not seem to have acted in any exaggerated manner in coming to their conclusions. The verdict does not appear either unjustifiable or excessive. The jury was the proper tryer of the fact, and the circuit court did not err in refusing to disturb the verdict.

Upon the whole case we are of opinion that there is no error in the judgment complained of, and the same must be affirmed.

JUDGMENT AFFIRMED.