(Decided 12th November, 1886.)

PHILIP F. DULING *vs.* THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAILROAD COMPANY.

*Railroad Company—Carrier of Passengers—Duty of Passenger in Purchasing a Ticket.*

Persons desiring tickets of travel, are expected to inform themselves as to the train they wish to take, and must take for their destination. If they do not understand or see the schedule posters or time tables provided by the company, it is their duty in law to inquire and learn what train they should take to reach the point they wish. And if a mistake is made, not induced by the railroad company, against which ordinary diligence as to inquiry would have protected, no redress against the company will be accorded.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, and BRYAN, J.

*Albert Constable,* and *Henry W. Archer,* for the appellant.

*William J. Jones,* and *Alexander Evans,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellant purchased of the appellee, a railroad transporting passengers for reward, a ticket from Elkton to Stanton, when a train was approaching and going toward "Stanton." He boarded that train and found, that, by the company's regulations, that train could not and would not stop at "Stanton;" so that he was required, either, to stop at "Newark" and wait for a train which would stop at Stanton, or, to pay the additional fare of ten cents, for the distance from Stanton to Newport, (a station beyond "Stanton" at which the train he boarded did stop,) and then walk back to Stanton, a distance of about three miles. He chose to do neither; but stopped at Newark and finished his journey to Stanton on foot, and has sued the railroad company for selling him a ticket by a train, which, he claims, was represented to him as then about to proceed from Elkton to Stanton, "to deliver passengers at the latter station." He does not claim, nor attempt to prove that the ticket agent, or any officer of the company or train, expressly represented to him, either voluntarily or in response to inquiry from him, or other person in his presence, that the train then approaching and which he took, was his right train, and would stop at Stanton. If he had so proved, a very different question would have been presented, and one of more seriousness upon which we design hereby to intimate no opinion. He made no inquiry; but he claims the sale of the ticket,

*when a train was approaching,* was a representation, that the *train then coming* would stop at "Stanton;" and he endeavors to sustain this position by evidence, which, he contends, establishes such a custom on the part of the agent in selling tickets, as did deceive him into supposing he could go to "Stanton" by the train which he boarded, and justified him in so attempting.

The Circuit Court did not think the evidence legally sufficient to warrant a verdict for the plaintiff, and accordingly so instructed the jury; and the verdict and judgment being for the defendant, the plaintiff appealed.

We fully agree with the Circuit Court, and think there was no error in taking the case from the jury.

It is well settled law, that railroad companies from the nature and necessities of their business, must have the power to make *reasonable* rules and regulations as to the manner of performing their duties as public carriers; that is to say, as to the hour and schedule time for starting and running their trains, and as to the places, on the route, at which particular trains shall stop in transit. Schedule posters informing the public of the time of departure from particular places, and the destination of the several trains are placed in the ticket offices, station houses and public places in view of the public, and time tables are always on hand for distribution, that passengers may be well informed of the hour at which, and train by which they may reach any desired destination on the line of the road. Being thus informed or afforded the means of information, persons desiring tickets of travel are expected to inform themselves as to the train they wish and must take for their destination; and if they do not understand or see the notices, it is their *duty in law to inquire* and learn what train they should take to reach the point they wish; and if a mistake is made, not induced by the railroad company, against which ordinary diligence as to inquiry would have protected, no redress against the

company will be accorded. Numerous authorities may be cited for the principles we have laid down, to some of which we refer. *Thompson on Carriers,* 66; *Fink vs. Albany and Susquehanna R. R. Co.,* 4 *Lansing,* (*N. Y.,*) 147; *Johnson vs. Railroad,* 46 *N. H.,* 220; *Dietrich vs. Penna. R. R. Co.,* 71 *Pa. St.,* 432–436; *Ohio & Miss. Railway Co. vs. Applewhite,* 52 *Indiana,* 540; *Chicago & Alton R. R. Co. vs. Randolph,* 53 *Illinois,* 514; *Logan vs. Hannibal and St. Joseph R. R. Co.,* 77 *Missouri,* 663.

In the present case it is admitted, that a large printed schedule of the trains and their time of respective departure from Elkton, and where they would severally stop, was conspicuously posted in the Elkton ticket office, where the appellant purchased his ticket. By that poster it appears, as it does also by other evidence, that there were five trains which left Elkton, at that time, daily, going northward, four of which stopped at Stanton, where the appellant wanted to go, and only one of those trains did not stop at Stanton; and that was the one appellant selected for his trip and boarded. The appellant lays his mistake, and consequent disappointment at the door of the appellee, and bases his claim for damages on the contention, that he took the train he did because of the conduct of the agent in selling him a ticket *as the train was about to arrive,* which act of the agent, according to his understanding of the agent's custom amounted to a representation to him that that train would stop at Stanton.

A custom or usage which will control the interpretation of a contract must be one which is of such general acceptance and prevalence in a community that *all* contracts are presumed to have been made with the knowledge of and with reference to such custom or usage. *Anson on Contracts,* 244–5; *Johnson vs. Railroad,* 46 *N. H.,* 220–1; *Foley and Woodside vs. Mason & Son,* 6 *Md.,* 48. Whether, therefore, this be a suit for violation of a *contract* by the Company, or *for misrepresentation,* it is clear that the

custom or usage, relied on for recovery, must be one which would bind the company, either for the construction of the contract in the ticket, or to make the company answerable for the statements of its ticket agent. If the practice of a ticket agent can be shown to control a contract for carriage on the road, and make that custom or usage of the agents prevail over the published notices and schedules of the company, and the regulations thereof, of which the passenger is ordinarily presumed to have knowledge, as the law makes it his duty to inquire (which we do not decide); it is very clear that the evidence in this case was not legally sufficient to establish such usage, as would bind the company and release the passenger from the obligation to inquire and inform himself. A custom or usage in law is something which exists in general repute. It is so prevalent that every one is supposed to know its existence, and is presumed to act and contract with reference to it. The plaintiff testifies it was the custom of the ticket agent to raise the window ten or fifteen minutes before a train would arrive, and to sell tickets for that train only, and for places only at which that train would stop; but he says his knowledge was based wholly on his experience and what he had seen in the ticket office. He had never asked about it, or *ever heard* any body say there was such custom. He had never asked for a ticket to any place and been refused, nor had he known any body else to ask for one for any train, and be refused a ticket by the agent. His testimony therefore only shows what *he thought* was the usage, from what he had seen done, and had happened not to see done. He had no other knowledge, and, therefore, his testimony cannot tend in the slightest degree to establish a controlling custom. He was certainly not influenced by any thing except what he had seen and therefore thought it safe to do. Notwithstanding he did not in fact know of a prevailing custom, yet if such custom in truth existed, it may

be contended that he would be conclusively presumed to know of it, and it would consequently control his contract. We find no evidence of such custom legally sufficient to establish such legal usage, or even, in our opinion, tending that way. With one voice all the plaintiff's witnesses say they never knew of anybody asking for a ticket to any place, at any time when tickets were being sold, and being refused. Beyond their own personal observation they have no knowledge of a custom of any kind in and about the matter. Thackeray, the main witness for the appellant describes the ticket agent's habit of raising the window of the office for the sale of tickets, as a train was approaching, and about ten minutes before its arrival in the same way as the appellant did; and his opinion of the agent's habit in the sale of tickets was *solely* based on what he had done and seen done. He bought to the station he wanted to reach and says he usually knew where the train he wanted was going. He said he would not ask for a ticket if he did not *know* a particular train would stop at the station he wanted to reach; and if he did not know he would inquire. He therefore did not know of an invariable custom which did away with the necessity of inquiring. He testifies therefore to nothing but personal observation of the habit of that agent. The other witnesses, three in number, confine their knowledge as derived wholly from experience. They had never applied for a ticket for a train other than the one approaching and been refused it, nor had they known of any one else doing so and being refused. In fine they had never heard anything at all about it. This analysis of the appellant's testimony and proof shows conclusively that there was nothing offered which could possibly justify a jury in finding a fixed custom on the part of the agent, so generally known and understood, that even the railroad company would be affected with knowledge of it, and be bound by it. But it is contended that the defendant's witness, the ticket

agent, gave testimony from which a jury might find such controlling custom. We do not think so. Whatever obscurity there may be in his statements of his habit in that regard, or even inconsistency in his statements, he does say expressly that *whenever the office was open* he sold tickets *for any train,* and that persons often bought tickets to be used days ahead. He certainly says nothing which tends to establish a custom which would bind the company.

Finally, it was contended that the ticket being marked " for this day and train only," this was of itself a representation. Clearly it was not. Had it been marked " good for train *No.* 26 *only,*" which train he took, the contention would be plausible ; but it was not so marked. Being a first-class ticket the evidence is all one way, that it was good till used. And if it were not, it was good for that *whole day* and any train going to Stanton that day ; so that he could have taken another train. The ticket's statement could certainly not deceive. As, in our opinion, the evidence offered, under no state of the pleading, would be legally sufficient to warrant a finding for the plaintiff, we have not found it necessary to consider the questions raised by demurrer.

*Judgment affirmed.*

(Decided 12th November, 1886.)