3821. SOUTHERN RAILWAY COMPANY *v.* FLANIGAN.

1. In the absence of statutory prohibition or regulation, a railroad company may adopt a rule that certain passenger-trains, running regularly on its road, will stop only at designated places.

2. Where a common carrier sells to a person a ticket between two points on its line of road, and the ticket contains no express restriction as to the train or trains on which it will be accepted for passage, the holder thereof has the right to assume, in the absence of any information, actual or constructive, to the contrary, that he may ride on the ticket to his destination as indicated by the ticket, on any train of the company carrying passengers to that point.

3. Where a person, having bought his ticket to a particular station on the line of the railroad, boards a passenger-train of the company in ignorance of the fact that the train makes no stop at that particular place, it is the duty of the conductor, when he first discovers the passenger's mistake, to inform him of the fact, in order that the passenger may exercise his option to remain on the train to the point to which his ticket entitles him to ride, or to disembark at some station where the train does stop. The passenger can not be treated as a trespasser before reaching the station called for by his ticket; and if, over his protest, he is compelled by the conductor to leave the train before reaching it, his wrongful expulsion is a tort for which the railroad company is responsible in damages.

DECIDED MARCH 6, 1912.

Action for damages; from city court of Atlanta—Judge Reid. October 21, 1911.

*McDaniel & Black, E. A. Neely,* for plaintiff in error.

*J. T. Moore, Moore & Branch,* contra.

HILL, C. J. The plaintiff's petition alleges, that on March 26, 1910, she bought a ticket from the agent of the Southern Railway Company at Science Hill, Kentucky, entitling her to transportation to Jenkinsburg, Georgia, and, after purchasing the ticket, boarded one of the regular passenger-trains of the defendant company with her six children, for the purpose of going to Jenkinsburg, to which place the train was going. When she arrived at Atlanta, Georgia, she was for the first time informed by the conductor of the train

that the train she was on was a through train, and did not stop at Jenkinsburg, and that she would have to leave the train in Atlanta and wait for another train, in order to complete her trip to Jenkinsburg. The train arrived in Atlanta about eleven o'clock at night, and when the conductor told her that she could not continue her trip to Jenkinsburg on that train, and would be compelled to leave it, she objected to being put off in Atlanta and insisted upon continuing her trip to Jenkinsburg on that train. Nevertheless, the conductor would not permit her to complete her trip to Jenkinsburg, and she was thus compelled to leave the train and to wait in Atlanta from eleven o'clock that night until 7.30 o'clock next morning. She was practically without money, was an entire stranger in Atlanta, and was in a delicate state of health at the time. In this situation she was compelled to sit up in the depot in Atlanta all night with her children. She was caused great anxiety and physical suffering, suffered much pain and discomfort by reason of having to stay over in Atlanta and sit up all night, and was rendered ill by the worry, anxiety, and discomfort thus suffered. by her, and she continued to suffer for several weeks as a result of these facts. She alleges that the conduct of the conductor in compelling her to leave the train in Atlanta, under the circumstances stated, amounted to an expulsion; that, having purchased a ticket to Jenkinsburg, she was entitled to be carried on that ticket to that point; that she was not informed when she boarded the train at Science Hill that the train was a through train and would not stop at Jenkinsburg, and that she would have to remain in Atlanta for another train, and she was for the first time informed of this fact by the conductor on reaching Atlanta. She sues to recover damages, both compensatory and punitive, for the tortious conduct of the conductor.

The defendant filed a demurrer, on general and special grounds. Some of the special grounds were sustained, with leave to amend, and some were overruled. The general demurrer was overruled, and to the judgment overruling this general demurrer the defendant excepted.

Three questions are raised by the record: (1) as to the right of the railroad company to promulgate rules regulating the running and stopping of its trains at stations, requiring some trains to run through without stopping, except at designated stations on its

line, and others to stop at all stations; (2) as to the duty of one who buys a ticket to inform himself on what train the ticket would entitle him to transportation; and (3) as to the rights of the passenger who ignorantly boards a train which does not stop at the station to which he has bought a ticket, and the correlative duty of the conductor of the train when he discovers that such passenger is on the wrong train.

1. In the absence of statutory regulation or prohibition, a railroad company may adopt regulations that certain passenger-trains, running regularly on its road, shall stop only at designated stations. There can be no doubt that such rules and regulations are reasonable and are necessary in the proper conduct of the business of the railroad company. Civil Code (1910), § 2729; *Southern Ry. Co.* v. *Watson,* 110 *Ga.* 681 (36 S. E. 209) ; *Hart* v. *Southern Ry. Co.,* 119 *Ga.* 927 (47 S. E. 206, 100 Am. St. R. 212) ; Hutchinson on Carriers (3d ed.), § 1060. But a rule, however reasonable, should be enforced with due regard to the obligation of extraordinary diligence which the law imposes upon carriers of passengers.

2. It is insisted by counsel for the plaintiff in error that a passenger is bound to inquire and ascertain whether the train which he proposes to take stops at the station to which his ticket entitles him to ride; that if, without inquiry, he boards a train which, by the regulations of the carrier, does not stop at his destination, he can not require the train to be stopped at such destination; but that he may lawfully ride to the nearest point short of his destination where the train regularly stops; and it is said that there is no allegation in the petition that the plaintiff made any effort to have the train on which she had taken passage stop at the nearest point short of Jenkinsburg, the particular station to which she had bought a ticket, nor in fact that Atlanta was not the nearest schedule stop of that train to Jenkinsburg. The rule as claimed by the plaintiff in error is unquestionably supported by great weight of authorities, both text-writers and decisions of courts. Hutch. Carr. (3d ed.) § 1060, and cases cited in the notes; 4 Elliott, Railroads, 1593; 3 Thomp. Neg. § 2562. Discussing this subject, Thompson, in his Commentaries on Negligence, supra, declares that "it is the duty of a person before taking passage upon a railroad train to use reasonable diligence, by inquiring of the station agent or the conductor of the train, or by reading the published schedules of the train, or by

other means, to ascertain whether or not the particular train stops at this particular place of destination;" and he cites in support of this rule several decisions in the notes, which hold, in effect, that where an intended passenger purchases a ticket at the company's office when the train is about to depart in the direction in which he wishes to go, without making inquiry as to whether or not the train will stop at the particular station to which he has purchased the ticket, and after boarding the train he learns for the first time that the train will not stop at that station, he has no redress against the company, either for carrying him beyond his particular station, or for requiring him to get off at an intermediate station. In the case of Texas & Pacific Railway Co. *v.* Ludlam, 57 Fed. 481, Judge Pardee, speaking for the Circuit Court of Appeals of the fifth district, announces the rule as follows: "It is the duty of the person about to take passage on a railroad train to inform himself when, where, and how he can go or stop, according to the regulations of the railroad company; and if he makes a mistake, not induced by the company, against which ordinary care in this respect would have protected him, he has no remedy against the company for the consequences." And he further holds that where a train not scheduled to stop at a certain station is boarded by a person holding a ticket for such station, without informing himself whether he can stop there or not, the failure of the conductor to inform him at the first opportunity that the train does not stop there, so that he can exercise the right of stopping at some intermediate station, is not a breach of the company's obligation, so as to render it liable for damages caused to a passenger by being put off at the last preceding station where he is subjected to great inconvenience and exposure. As to this latter point there was a dissenting opinion by Judge Locke, district judge. Thompson, in his Commentaries on Negligence (vol. 3, § 2563), declares that the decision of the majority of the United States Circuit Court of Appeals on this point, "though rendered by a Federal court of appeals, can not make a rule of law so palpably unreasonable, so unjust, and so opposed to public right."

We can not fully subscribe to the soundness of the rule that one who proposes to become a passenger is bound to inquire, when he purchases his ticket, and before he boards the train, to ascertain whether the train which he proposes to take, according to its sched-

ule, stops at the particular place on the line of the railroad to which his ticket entitles him to ride. It seems to this court that the sounder rule on the subject is to impose upon the railroad company the duty of giving the information to the purchaser of the ticket over its railroad as to what train stops at the particular station to which it sells the ticket and not to impose the duty of inquiry upon the proposed passengers. Agents who sell tickets know the schedules of the company's trains, and it would seem to be more reasonable to require that this information should be given to the passenger when he proposes to buy his ticket to a particular station, than it would be to require the passenger before or when he purchases the ticket to make the inquiry. A ticket over a railroad is not only a receipt for the money paid for the ticket, but constitutes a contract between the passenger and the company for transportation according to its terms; and in the carrying out of the contract the law of this State imposes upon the carrier extraordinary diligence to protect the passenger, and certainly it seems unreasonable to hold that the full measure of the carrier's diligence has been reached unless he gives this information in his possession so important to the exercise by the passenger of the right to which he is entitled under his contract as evidenced by the ticket. When a passenger buys a ticket, he has a right to presume that all necessary information or instructions will be given him for the proper use of that ticket. And when one who proposes to become a passenger buys a ticket from an agent of the carrier to a particular station, he has a right to assume, in the absence of any information, actual or constructive, to the contrary, that he may ride on that ticket to his destination on any train of the company carrying passengers to that place. Certainly this should be the rule, in the absence of any restriction in the ticket itself, showing that it is not good for transportation to the particular station to which it has been purchased. When a person goes to a railroad station and buys a ticket from the agent of the company, the reasonable inference from that act is that he intends to become a passenger to his destination on the next train passing the initial point and going to the particular place designated by the ticket; and if the next train is a through train, or one that does not stop at that station, the agent of the company, when he sells the ticket to the proposed passenger, should inform him of the fact. In *Atkinson* v *Southern Ry. Co.*,

114 *Ga.* 146 (36 S. E. 888, 55 L. R. A. 223), it is held, that, "when a railroad company places an agent in charge of its business at a place where passengers are expected to board its trains, and authorizes such agent to sell tickets to passengers, to be used when taking passage upon its trains, one who purchases from such an agent a ticket upon which there is no statement as to what trains it will or will not be good for passage upon has a right to presume that the agent is authorized by the company to give him information on this subject." Of course, if the proposed purchaser should ask for the information, it would be the duty of the agent to give it to him, and the company would be held responsible for the correctness of the information. *Atkinson* v. *Southern Ry. Co.,* supra. But we think the rule should go further and make it the duty of the agent, having reason to believe that the purchaser proposes to take passage on a particular train, to inform him that that train will not stop at the station to which he purposes to purchase a ticket, so that he may regulate his conduct as a passenger accordingly. We frankly admit that this opinion is contrary to the views of many judges and text-writers, but we are nevertheless strong in the faith that it is more in consonance with reason and justice, and more in harmony with the rule of extraordinary diligence which the law imposes upon carriers of passengers. The point has not been expressly ruled by the Supreme Court of this State, but we think the principle herein announced is fairly deducible from several of its decisions. *Central Ry. Co* v. *Roberts,* 91 *Ga.* 513 (18 S. E. 315); *Head* v. *Georgia Pacific Ry. Co.,* 79 *Ga.* 358 (7 S. E. 217); *Caldwell* v. *Richmond & Danville R. Co.,* 89 *Ga.* 550 (15 S. E. 678); *Pickens* v. *Georgia R. Co.,* 126 *Ga.* 517 (55 S. E. 171).

3. But even if it be conceded that the rule is as claimed by the plaintiff in error, yet, under the allegations of the petition, or reasonable deductions therefrom, a cause of action was set out. If a passenger boards a train which, according to schedule, does not stop at the station called for by his ticket, in ignorance of that fact and without making any inquiry in reference thereto, he does not thereby become a trespasser, but he has the right to remain on board the train and to exercise his election as to a station where the train does stop, at which he will get off. As expressed by Thompson in his Commentaries on Negligence (Vol. 3, § 2563): "If the conductor has no authority to vary the rules of the company in regard

to stopping his train at a station where it is not permitted to stop by such rules, then it is the plain duty of the conductor, when he discovers that the passenger has a ticket calling for a place at which the conductor can not stop the train, to inform the passenger of that fact, so that he can exercise his option as to the intermediate place at which he will get off." Applying this rule to the allegations of the petition, we hold that when the conductor of the defendant company first discovered that the plaintiff held a ticket which on its face entitled her to ride to Jenkinsburg, Ga., and that she had, presumptively, ignorantly gotten on a train which under the schedule did not stop at that place, it was his duty then and there to inform her of that fact and give her the opportunity of then getting off of the train and waiting for one that would stop at her place of destination, if under the rules, he had no authority to stop the train at that place. If he had the authority, notwithstanding the rule, to stop the train at Jenkinsburg, having withheld from her information on the subject, and having taken up her ticket, or punched it, which is equivalent to the same thing, it became his duty to stop the train at Jenkinsburg and give her an opportunity of alighting therefrom. "A railroad conductor should not accept from a passenger a ticket to a particular station, knowing that she intends and desires to get off there, unless he intends to stop the train at that station and allow her to alight. If he accepts the ticket, a duty arises to stop the train at the point of destination fixed by the ticket." *Pickens* v. *Georgia R. Co.*, supra; *Caldwell* v. *Richmond & Danville R. Co.*, supra.

It is fair to assume, in the light of the general practice of conductors in taking up tickets or fares, that the conductor in the present case discovered, soon after the train left the initial point, that this passenger had a ticket which on its face entitled her to transportation to Jenkinsburg, Ga. He should then have told her that the train on which she was riding did not stop at Jenkinsburg, and have given her the opportunity of getting off at that time, or of making an election to get off at some other station where the train did stop. He could not, in the exercise of that extraordinary diligence which the law imposes upon carriers of passengers, take up the ticket, or any portion thereof, or punch it, thus indicating that the passenger was entitled to ride thereon, and with-

hold from her information as to the fact that she could not continue on that train to Jenkinsburg, and permit her to ride on the ticket all the way to Atlanta, which the court judicially knows is some distance from Science Hill, Ky., and, upon reaching Atlanta at night, inform her for the first time that she was on the wrong train, and then compel her to get off and remain in Atlanta all night, awaiting the arrival of a train on which she could continue her trip to Jenkinsburg. Having brought her on his train thus far on her route without objection, it became his duty, as an agent of the company with whom she had the contract of transportation, to permit her to continue on that train, and to stop and allow her to disembark therefrom at Jenkinsburg. "Where a person, having purchased his ticket for a certain station, gets on a train which makes no stop there, the conductor, by taking and punching his ticket, accepts him as a passenger, regardless of whether he was negligent in getting on the train." Schurr *v.* Houston, 10 N. Y. State Rep. 262; 9 Am. Dig. (Century Edition), title "Carriers," p. 1037, § 1109. While probably this decision goes a little too far in the latter statement relating to negligence in boarding the train, yet, where the passenger has been guilty of no negligence, the principle announced in it is pertinent and sound.

It is conceded by learned counsel for the plaintiff in error that the plaintiff might lawfully have ridden on her ticket to the nearest point short of her destination, and it is stated that there is nothing in the allegations of the petition to negative the assumption that she was entitled to do this, since it is not alleged that Atlanta was not in fact the nearest schedule stop of the train upon which she was riding; but we think that if a person purchases a ticket to a particular station, and ignorantly boards a train which does not stop there, he is entitled at his option to ride as far as that station, and can not be treated as a trespasser and forced to leave the train until after the station is reached. The conductor must leave to the passenger the right to remain on the train until the place called for by his ticket is reached, if the passenger desires to do so; for the passenger would have that right even if the train did not stop there. The conductor would only have the right to eject the passenger after the station was reached where the train did not stop and the passenger remained thereon without paying fare. 3 Thomp. Neg. § 2568. The view, however, that we have announced in this

opinion renders this point immaterial. Having accepted her as a passenger and permitted her to ride all the way to Atlanta on the ticket, the company had no right to arbitrarily break their relationship, or to temporarily suspend it. The conduct of the conductor in bringing her thus far on her route and in withholding from her the information that the train did not stop at Jenkinsburg amounted to a waiver of the rule in the particular instance relating to the stopping of the train at Jenkinsburg. The enforcement of the rule, under the circumstances, was unreasonable and unwarranted, and was a breach of that extraordinary diligence which the statute imposed upon the carrier. In *Caldwell* v. *Richmond & Danville R. Co.*, supra, it is held that a railroad company which, as a common carrier, receives a passenger, and collects her ticket to a particular station, with knowledge on the part of the conductor that she intends and desires to leave the train at that station, is charged by law with the duty of stopping the train at that station and affording her an opportunity to get off, and failure to perform such duty is not only a breach of contract, but a tort for which an action is maintainable. See, also, *Williamson* v. *Central Railway Co.*, 127 *Ga.* 125 (56 S. E. 119). *Judgment affirmed.*