## 3772.  SOUTHERN RAILWAY COMPANY *v.* DAUGHDRILL.

1. A common carrier who undertakes and agrees to convey a passenger by a definite route and under certain conditions must comply with its contract or be liable for any damages consequent upon its breach. If, after full explanation of the peculiar circumstances and with full knowledge of the reasons why the proposed purchaser of the ticket desires the information, the ticket agent of a common carrier contracts with a passenger to convey him by a particular route, or under specified conditions as to connections, the contract must be performed, notwithstanding the performance of the contract may require the carrier to change, for a time, a rule usually followed in the operation of its trains, provided the change is not in violation of law or of any rule of the railroad commission; or upon breach of the contract the passenger may recover any damages he may have sustained by reason of the breach.
2. The evidence authorized a recovery for pain and suffering, and the instructions of the court upon that point are not subject to exception or criticism.
3. The evidence authorized a finding in favor of the plaintiff, and, after the verdict was voluntarily reduced by her, there was no error in refusing a new trial.

DECIDED OCTOBER 2, 1912.

Action for damages; from city court of Atlanta—Judge Reid. September 16, 1911.

*McDaniel & Black,* for plaintiff in error.

*Hewlett & Dennis,* contra.

RUSSELL, J. The defendant in error brought a suit against the Southern Railway Company, alleging, that on April 28, 1910, she purchased from that company a continuous-trip ticket from Gainesville to Rockmart, Georgia; that when she reached Atlanta and prepared to change cars the agent of the company refused to allow her to take its train which left Atlanta at 5.10 p. m., and insisted that she could not take that train, because it did not stop at Rockmart. The petition alleged that before the ticket' was purchased the plaintiff's husband informed the company's agent at Gainesville that his wife was not at all well, and that if she had to wait in Atlanta he would accompany her. After the agent of the railway company in Atlanta told her that she could not take the train, she became very much excited and humiliated. She was in a strange city, without friends, acquaintances or money to pay hotel bills or other expenses. The agent informed her that perhaps she could catch the Seaboard Air-Line train which left the Union Station in five minutes time. She caught a cab and went to the Union Station and caught this train, but when she had gotten upon the Seaboard Air-Line train she virtually collapsed from the excitement and shock to her nerves. She went to bed immediately upon her arrival at Rockmart and was confined to her bed for a week, and continued to suffer for almost a year, from the effect of her excitement and nervousness.

The plaintiff proved her case substantially as laid. The evidence of her husband was that he and his wife were in Gainesville and she intended to go to Rockmart. She was in very bad health, very nervous and easily excited. He went to the agent of the Southern Railway Company at Gainesville and inquired what connections could be made going from Gainesville to Rockmart. He explained fully to the agent why he wanted to know, and that if his wife was subject to a "lay-over" in Atlanta he would come as far as Atlanta with her, if she were to be delayed for any length of time. The agent told him that his wife could take the evening train (she had first intended to go on the morning train), and go right on through to Rockmart; that she would have only a few minutes to wait in Atlanta, and would be transferred in the same car-shed. He thereupon told the agent that his wife would wait until the evening train and that he would not go with her. The witness testified that he told the agent that his wife was not well, and

that if·she had to lie over in Atlanta, or if she had to make any transfer across town, or anything of that kind, he would come with ·her; and after the agent's assurance that his wife would only have to wait a few minutes and be transferred in the same car-shed, he communicated these facts to his wife. The plaintiff testified, that her husband told her she would make a continuous trip; that she would only have to wait a few minutes in Atlanta; that upon her arrival in Atlanta she went to the information window and asked what time she could get a train out to Rockmart. The agent told her there would be a train passing along in a few minutes, but that this train did not stop at Rockmart and that she could not get on it. She told him she was sick and wanted to get to Rockmart, and he informed her that she would then have to go to the Seaboard Air-Line Railway and go down on its train, and that she had only five minutes to catch the train, but possibly it might be late. He asked to see her ticket, and, after looking at it, said "this is a continuous ticket, but you can not go there until about 12 o'clock to-night." The plaintiff testified that the agent's statement frightened her and made her very nervous, because she had no money. She was sick and knew she had no money to pay hotel fare or have a doctor, and thought she was going to be obliged to stay there; that she had no funds at all, and knew no one at all in the city of Atlanta. She further testified that she had travelled but little by herself; that she usually travelled with her husband. Upon the agent's statement that while she had only five minutes to catch the Seaboard Air-Line train, perhaps she could get a hack and catch .the train because it might be late, she got a hack and went over to the other depot. She was not really able to be up, but she had to be up, because she knew she had to go somewhere. She testified that as a result of the excitement she was prostrated when she boarded the Seaboard Air-Line train; that she went home and went to bed, and was in bed the rest of the week. She suffered from a cessa-tion of her menstruation, and was weak and nervous for a long time. There was testimony to the effect that the plaintiff's usual weight was from 140 to 148 pounds, and that as a result of the nervous prostration to which she testified, she lost twenty pounds in weight. Another witness testified that she was in a very nervous condition when she came from the train to her house in Rockmart,

and that she was greatly nauseated. The attendant physician testified, that when he called to see her, she was very restless and nervous; that she was affected with excessive menstruation and apparently suffering pain; and he testified as an expert that the excitement caused by the circumstances related by the plaintiff would naturally be injurious to a woman suffering from the sickness by which she was affected.

The verdict was for $1,000, but the plaintiff voluntarily wrote off a half of the recovery. The defendant excepted to the refusal of a new trial. The motion for a new trial contained the general grounds, and the ground that the verdict was excessive, and excepted to the charge of the court to the jury upon the subject of pain and suffering, alleging that there was no evidence warranting the instruction.

1.   Undoubtedly the plaintiff had a right of action, whether she was entitled to recover for pain and suffering as an element of her damages or not, and whether the amount awarded her by the jury is excessive or not. The case at bar is not unlike that of the *Atlantic Coast Line Railroad Co.* v. *Stephens,* ante, 520 (75 S. E. 841), and is practically identical in principle with the case of *Southern Railway Co.* v. *Flanigan,* 10 *Ga. App.* 745 (74 S. E. 85). The only question presented on this feature of the case is whether or not a carrier is to be held to its contracts as natural persons are held to be bound by theirs,—whether if a railroad company agrees to carry a passenger by a certain route, or within a definite time, or under definite conditions as to connections, it is not bound to comply with this contract and is not liable for any damages which may result from its breach. It will not do to say that the company is not liable for the acts or statements of its agents in selling a ticket (if the person who sells the ticket is the duly authorized ticket agent); for a corporation can only act through its agents. They are its head and arms and legs.

At the time of the purchase of the ticket involved in this case the plaintiff was a woman in bad health, suffering from extreme nervousness, caused by very irregular menstruation. She wished to go to Rockmart to be at home and to receive medical treatment. According to some of the testimony her nervous condition was such that it would not be prudent or proper for her to be subject to a nervous strain, or to attempt any unusual inconvenience with-

out the assistance of an escort.  Her case was not an unusual one, when considered in relation to the large class of unfortunately diseased females.  Her husband, as was natural and proper, would have gone with her if he had known that she would have to meet the ordinary luck of travelers, but he was informed by the defendant's agent who sold him the ticket that his wife could take a certain designated train and be conveyed to her home without inconvenience other than in merely changing cars in the same carshed, and that she would have to lie over only a few moments. Upon this assurance and understanding he bought the ticket, which provided for a continuous passage and expired at midnight of the day of its purchase.  We do not attach any importance to the words "good for a continuous passage" on the ticket, further than in so far as it shows that the parol agreement was not in conflict with the written contract.  Of course, the words "continuous passage," when used on a railroad ticket, do not import an agreement that the passenger shall be carried without any stop. It does not imply that there may not be a lie-over or a necessary change of cars, but the use of that language indicates to the purchaser that the agent might have had the authority to issue a ticket in this particular instance for such a passage as he assured the purchaser could be had.  In other words, there was nothing in the ticket to put the purchaser on notice that his wife could not make the trip just as the agent assured him she could make it.  On the assurance of the agent the ticket was bought.  It makes no difference that the agent (as it turns out) did not have authority to give the assurance.  Presumably he did have the authority, and if he did not have it, and any injury resulted from his misrepresentation, it must be that his principal, and not the purchaser of the ticket, shall be the sufferer as a consequence.  A common carrier who undertakes and agrees to convey a passenger by a definite route and under certain conditions must comply with the contract, or be liable for any damage consequent upon its breach.  If, after full explanation of the peculiar circumstances and with full knowledge of the reasons why the proposed purchaser of the ticket desires the information, the ticket agent of a common carrier contracts with a passenger to convey him by a particular route, or under specified conditions as to connections, the contract must be performed, notwithstanding the performance of the contract may require the car-

rier to change, for a time, a rule usually followed in the operation of its trains, provided the change is not in violation of the law or of any rule of the railroad commission; and on breach of the contract the passenger may recover for any damage he may have sustained by reason of the breach. There can therefore be no doubt that the plaintiff was entitled to recover upon the breach of the contract, if the agent had authority to make the contract set up by the plaintiff, or upon the breach of public duty in not giving correct information as to the connections of its trains, if the agent did not have authority to make the contract.

2. But it is insisted that the evidence did not authorize a recovery for pain and suffering, and that the court erred in charging the jury at all upon that point. We think the evidence upon this point required that the jury be instructed with reference to the rights of one who has suffered physical pain as a result of an injury. The testimony of the plaintiff may seem to be somewhat exaggerated, and yet we can not say that it is. We certainly can not say that it is unreasonable. She testified that as a result of the nervousness, she suffered a long illness and a year's weakness. The plaintiff in error insists that, this sickness being caused by the nervousness, and the nervousness being caused by the breach of public duty, and the sickness, if caused by the occurrences in Atlanta, not being directly consequent upon the alleged tort, the injury to the plaintiff is too remote to be the basis of a recovery. We may concede that the plaintiff would not have been sick except for the nervousness, and that she was made nervous by the discovery that she was obliged to lie over in Atlanta without any acquaintances, friends, or money, and that she allowed herself to become excessively excited, and went rapidly in a hack to catch the train of another railroad company, when she could have remained in the depot of the plaintiff in error and reached her home on the midnight train. We may concede all that, and still the prime cause of the injury was the act of the company in selling the plaintiff a ticket different from that which she desired and different from what it was represented to be. Although the act of the plaintiff herself intervened between the defendant's wrong and the injury suffered, and concurred in producing the damage for which she seeks to recover, the company would not be relieved, if the intervening act was the natural result or was induced by the previous

tortious act of the defendant. See *Rollestone* v. *Cassirer, 3 Ga. App.* 161 (59 S. E. 442), in which we held that "the rule is the same where, though the plaintiff's act may not in strictness have been caused or induced by the defendant's act or omission, yet the latter caused or created a negligent and dangerous condition, upon which the plaintiff's act, harmless and innocent in itself, and of a nature which might have been anticipated, operated to produce the injuries received." In *Godwin* v. *Atlantic Coast Line Railroad Co.,* 120 *Ga.* 747 (48 S. E. 139), it is said by Mr. Justice Lamar, delivering the opinion of the court: "In discussing legal causation, the phrase 'proximate cause' does not necessarily mean that which is nearest, but refers rather to the efficient cause, and in this sense is sometimes referred to as the 'immediate and direct cause' as opposed to 'remote.'" In *Southern Railway Company* v. *Tankersley, 3 Ga. App.* 548 (60 S. E. 297), we held that "By proximate cause is not meant the last act or cause, or the nearest act to the injury, but such act wanting in ordinary care as actively aided in producing the injury as a direct and existing cause." We think that when an injury can be traced directly to the tortious act (though there be several paths in the track which lead back to this act), and but for this tortious act it could not reasonably be supposed that the injury would have resulted, this essentially antecedent act may be said to be the proximate cause of the injury.

This court will not extend the rulings in the case of *Chapman* v. *Western Union Telegraph Company,* 88 *Ga.* 763, and in similar cases, beyond their particular facts, and it is not necessary to discuss the matter of a recovery from mental suffering, because it plainly appears in this case that the plaintiff, perhaps as a result of mental suffering, did actually suffer physical pain for which she was entitled to recover. The judge was right in charging upon this subject, and his instructions are so clear and pertinent as to be free from criticism.

3. This court has no power to declare excessive a recovery for pain and suffering; the amount of damages recoverable for pain and suffering is left by the code to the single tribunal of the enlightened conscience of an impartial jury; and as the trial judge was satisfied with the amount of the verdict as reduced by the plaintiff herself, there was no error in refusing a new trial.

*Judgment affirmed.*