## SOUTHERN RAILWAY COMPANY *v.* BAILEY.

1. A railway company may make reasonable regulations in the conduct of
   its business.  In the absence of a statute to the contrary, a schedule
   which provides for the non-stoppage of a certain train at a particular
   place will not be considered unreasonable, where it appears that other
   trains are scheduled to stop at such place, and it is not alleged that they
   do not afford adequate service.
2. It is the duty of the purchaser of a ticket, or one who desires to become
   a passenger on a train, to ascertain, before boarding it, that it stops at
   the station to which he desires to be transported; and where he fails
   to do so, the proper agent of the railway company may compel him to
   leave the train at the last place at which the train is scheduled by the
   company's published regulations to stop before reaching the point of
   destination desired by the passenger.
3. The court erred in overruling the general demurrer to the petition.

                         JUNE 30, 1915.

    Action for damages.  Before Judge Daniel.  Henry superior
court.  April 20, 1914.

    The petition and the amendment thereto alleged that on the 6th

of December, 1912, the plaintiff purchased of the ticket-agent of the Cincinnati, New Orleans and Texas Pacific Railway Company, at Danville, Kentucky, a ticket entitling her to first-class passage from that place over the lines of that company to Chattanooga, Tennessee, and from there over the line of the Southern Railway Company to Jenkinsburg, Georgia. "After purchasing said ticket, petitioner boarded a train at Danville, Kentucky, at about eleven o'clock p. m., on said date." This was a through train operating over the lines of the said railway companies from Cincinnati, Ohio, to Macon, Georgia, and, according to the published regulations of the defendant and connecting carriers, was not scheduled to stop at Jenkinsburg, McDonough being the last place of stoppage before reaching Jenkinsburg. After the train had left Chattanooga, Tennessee, her ticket was demanded of her by the ticket-collector on the defendant's train, who "inspected" and punched it and returned it to her. After the train left Atlanta, Georgia, "a ticket-collector or conductor, who was collecting tickets on said train" again demanded of her her ticket, who, when exhibited to him, looked at it and punched it and returned it to her with the statement that she would have to leave the train at McDonough, as the train she was on was a through train and did not stop at Jenkinsburg. To this she objected; but the collector, upon arrival at McDonough, over her protest, demanded that she leave the train, which she did, and she was compelled to wait in the waiting-room of the depot at McDonough for six hours. She did not know that the train which she boarded at Danville was a through train and was not scheduled to stop at Jenkinsburg, and she was not informed, either by the ticket-agent from whom she purchased the ticket or the ticket-collector to whom she exhibited it, until after she had left Atlanta, that it would not do so; nor did she inquire of any one as to whether it would stop at Jenkinsburg. The defendant has local trains scheduled to stop at Jenkinsburg. Damages were claimed for alleged physical discomfort and mental agony experienced in the waiting-room at McDonough, on account of the expulsion from defendant's train, and punitive damages sought for the expulsion.

The defendant demurred generally and specially to the petition; and the demurrer having been overruled, it excepted.

*Harris & Harris* and *Smith & Turner,* for plaintiff in error.

*J. T. Moore,* contra.

HILL, J. (After stating the foregoing facts.) This is an action ex delicto for an alleged breach of duty owed by defendant to plaintiff, who was a passenger on defendant's train, occasioned by the wrongful expulsion of plaintiff from defendant's car by one of its agents. Under the view we take of the case, we shall only deal with the question raised by the petition and the general demurrer. The plaintiff boarded as a passenger a through train of a connecting carrier of defendant at a place in another State, for transportation to a point of destination situate within this State on defendant's line of railway, at which the train was not scheduled to stop, in ignorance on her part of this fact; and the question presented is whether the ticket-agent of the connecting carrier from whom she purchased the ticket, or the ticket-collector of the defendant when the ticket was exhibited to him, was under a duty to volunteer the information to her that the train would not stop at the place of destination called for by her ticket, without any inquiry from her. As there is no allegation that the contract of carriage between plaintiff and defendant bound the defendant to stop this train at Jenkinsburg contrary to its published rules, if such a duty existed at all it must be considered as having arisen by virtue of the relation of carrier and passenger, as created by the presence of plaintiff on defendant's cars in possession of an ordinary first-class ticket. It is alleged in the petition that the regulation of this train of non-stoppage at Jenkinsburg was a published rule of the defendant, promulgated by itself and connecting carriers; and that the defendant had other trains scheduled to stop at this place.

A railway company may make reasonable rules and regulations for the conduct of its business, which are binding on the public in transactions with it. Civil Code (1910), § 2729; *Southern Ry Co.* v. *Watson,* 110 *Ga.* 681 (36 S. E. 209); *Southern Ry. Co.* v. *Howard,* 111 *Ga.* 842 (36 S. E. 213); *Central Ry. Co.* v. *Motes,* 117 *Ga.* 923 (43 S. E. 990, 62 L. R. A. 507, 97 Am. St. R. 223). And, in the absence of statutory prohibition, a regulation of a railway company forbidding the stoppage of a through train at a specified place can not be considered an unreasonable regulation, where other trains are scheduled to stop at that place. See *Southern Ry. Co.* v. *Flanigan,* 10 *Ga. App.* 745 (74 S. E. 85); Hutchinson on Carriers (3d ed.), § 1060; 1 Elliott on Railroads, 302, § 200; *Sira* v. Wabash R. Co., 115 Mo. 127 (21 S. W. 905, 37 Am. St. R. 686,

and cases cited in note, p. 392) ; L. & N. R. Co. v. Miles, 100 Ky. 84 (37 S. W. 486) ; see also cases cited in note to International &c. Ry. Co. v. Hassell, 50 Am. R. 527 (62 Tex. 256). Therefore, when the plaintiff purchased a ticket at Danville, Kentucky, for transportation to Jenkinsburg, Georgia, the reasonable regulation that the train upon which she afterwards took passage would not stop at Jenkinsburg, by implication, entered into the contract of carriage, and no duty devolved upon defendant to stop the train there. Furthermore, the contract of carriage, as evidenced by the plaintiff's possession of an ordinary ticket, was not one for transportation on any particular train; but the undertaking on the part of the railway companies was to transport the plaintiff from Danville to Jenkinsburg over their lines of railway according to the reasonable rules promulgated by them. Assuming, then, that the agent at Danville was the agent of the defendant when he sold this ticket (as to this see *Head* v. *Georgia Pacific Ry. Co.,* 79 Ga. 358 (7 S. E. 217, 11 Am. St. R. 434) ; 4 Elliott on Railroads, § 1596, and cases cited), under a strict construction of the pleadings the mere allegation of the purchase of a ticket on the same date as that upon which plaintiff boarded the train would not create, in this case, the relation of carrier and passenger from the time of purchase, so that any duty could arise therefrom. For instance, it is alleged that plaintiff boarded the train at 11 p. m. on the day of the purchase of the ticket. She may have purchased the ticket at seven o'clock in the morning and then returned to her abode in the city until the time of the departure of this train. In doing so, she may have taken passage to and from the depot on a street-car. Were she to be considered a passenger of the railway company from the time of the purchase of the ticket and by virtue of her being the holder thereof, under the foregoing facts she would, while in the street-car, be a passenger of two carriers at the same time: the street-car company and the railway company. Hence, under the allegations of the petition, any duty to inform her being founded on the relation of carrier and passenger, and this relation not being established by an averment of the purchase of a ticket alone, it must follow that the duty could not be held to have existed at the time of the purchase from the agent of the ticket.

Nor do we think it was the duty of the ticket-collector to so inform her. It might be urged that the exhibition, by a passenger

to the ticket-collector on a through train, of a ticket calling for destination at a place at which the train was not scheduled to stop was sufficient to excite the attention of, or notify, the ticket-collector that the passenger expected or intended to ride on that train to the place of destination, and to place the duty upon him of informing her that the train did not stop at that place, that she might leave the train at some intermediate point; and that his failure to do so amounted to an acceptance of her by the defendant as a passenger on that train to the place of destination called for by her ticket, so that her subsequent expulsion from defendant's car, short of arrival thereat, would amount to a breach of duty to her. The answer to this is that the published schedule that this train did not stop at the place of destination called for by the ticket having by implication, under the right to make reasonable regulations under the statute, entered into and become a part of the contract of carriage (there being nothing alleged in the petition to negative this regulation of this train), and hence binding on the plaintiff, she had no right to expect or intend to be transported to this place; but the ticket-collector had the right to act on the assumption that she was only taking advantage of the quick schedule afforded by the through train as far as the reasonable rules of the company permitted her to be carried on that train, or to some intermediate station at which that train was scheduled to stop. In the case of Richmond &c. R. Co. *v.* Ashby, 79 Va. 130 (52 Am. R. 620), it was held: "A railway passenger, with a ticket for a station at which the train does not stop, has the right to ride to an intermediate station at which it does stop." Schedules of railway companies of their trains are made by them with reference to the convenience of the public, and any one who wishes to enjoy as a passenger the privileges afforded the public by a railway company as a carrier of passengers must bring himself within the requirements placed upon the public in the enjoyment of that relationship. "Reasonable regulations" as contained in the statute, would become meaningless, if a carrier of passengers were compelled to conduct its business and arrange its schedules to suit the convenience of each individual passenger, and not base its regulations upon the public good and convenience; for, under such circumstances, the number of regulations would be coextensive with the patronage of the road. If, on the other hand, it were considered,

as an original proposition, the duty of a carrier of passengers to inform a passenger of the schedules and stopping-places of its trains, in this State it may do so either by publishing, under the statute, such regulations to the public, or verbally through its agents; and when a passenger is informed thereof in the one way, this duty has been executed and the carrier need not also inform him in the other manner, where no inquiry is made by the passenger.

It has been held that when one presents himself for transportation on a particular train, the duty is upon him to inquire whether it stops at the place of destination called for by his ticket. In the case of Pittsburg &c. Ry. Co. v. Nuzum, 50 Ind. 141 (19 Am. R. 703), it was said: "It was the duty of the appellee to inform himself when, where, and how he could go, or stop, according to the regulation of the appellant's trains; and if he made a mistake which was not induced by the appellant, he has no remedy. Cheney v. The Boston & Maine R. R. Co., 11 Metc. [52 Mass.] 121 [45 Am. D. 190]; Boston & Lowell R. R. Co. v. Proctor, 1 Allen [Mass.], 267 [79 Am. D. 729]; Johnson v. The Concord R. R. Co., 46 N. H. 213 [88 Am. D. 199]; The Cleveland &c. R. R. Co. v. Bartram, 11 Ohio St. 457." And to the same effect see Chicago &c. R. Co. v. Bills, 104 Ind. 13 (3 N. E. 611); 4 Elliott on Railroads, § 1593, and cases cited in note; 2 Hutchinson on Carriers, § 1060.

There being no duty owing to the plaintiff in this particular, the defendant was concerned only with its duty to the public of maintaining its published schedule; and the plaintiff's right under her ticket was to be transported in compliance therewith to the last place, before reaching Jenkinsburg, at which this train was scheduled to stop; and the defendant's agent had the right to demand that she leave the train and to eject her at this point. 2 Moore on Carriers (2d ed.), § 7; International &c. Ry. Co. v. Hassell, supra; Duling v. Philadelphia &c. R. Co., 66 Md. 120 (6 Atl. 592); Allen v. Wilmington &c. R. Co., 119 N. C. 710 (25 S. E. 787, 8 Am. & Eng. R. Cas. (N. S.) 257); Richmond &c. R. Co. v. Ashby, supra; 2 Hutchinson on Carriers, § 1060, and cases cited in the note. We hold, therefore, that the ejection by defendant of plaintiff from this train at McDonough, the last stopping-place scheduled for this train before reaching Jenkinsburg, the place of destination called

for by her ticket, did not give plaintiff a right of action for breach of duty owed by defendant to her.

The court erred in overruling the general demurrer.

*Judgment reversed.    All the Justices concur.*